J-A12004-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LARRY YELLOCK | : | |
| | : | |
| Appellant | : | No. 1390 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 27, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006672-2019

BEFORE:  OLSON, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                **FILED AUGUST 10, 2023**

Appellant, Larry Yellock, appeals from the January 27, 2022 judgment of sentence entered in the Court of Common Pleas of Philadelphia County after a trial court, in a non-jury trial, convicted him of criminal trespass.[1]  Appellant was sentenced to 18 months' probation.  We affirm.

The record reveals that Appellant was charged with burglary – overnight accommodation, no person present (Count 1), theft by unlawful taking or disposition – moveable property (Count 2), receiving stolen property (Count 3), and criminal trespass (Count 4).[2]  On November 8, 2021, Appellant

---

[1] 18 Pa.C.S.A. § 3503(a)(1)(i).

[2]  18  Pa.C.S.A.  §§ 3502(a)(2),  3921(a),  3925(a),  and  3503(a)(1)(i),
respectively.

proceeded to a non-jury trial, having waived his right to a jury trial. N.T., 11/8/21, at 5-8.

The trial court summarized its factual findings, based upon the evidence presented in the non-jury trial, as follows:

[The victim] rented the top floor of a house [located in] Philadelphia[, Pennsylvania] in July 2019. [Appellant] lived in the rental unit below. [Appellant] was an experienced contractor, had previously done work for the landlord[, and] according to [Appellant's] own testimony helped [the landlord] with "business savvy-ness."

On August 2, 2019, [the victim] sent [the landlord] a [text message *via* her cellular telephone] threatening to leave her apartment and to withhold rent if he failed to fix water damage to her unit. [The landlord and the victim] exchanged [text messages] on [August 10, 2019,] about an insurance adjustor visiting her unit.

[Appellant] agreed to purchase the [residential building] from [the landlord] with a closing at or near the beginning of September 2019. [Appellant] testified that [the landlord] needed [the victim] to [vacate her apartment] before [the landlord] sold the property to [Appellant]. A realtor [] advised [the landlord] that the property was zoned [single family] residential, and that [the landlord] was violating the zoning restrictions by renting [portions of the building. Appellant] believed [the victim] had to be removed before the property could be sold.

On September [3, 2019, the victim's] neighbor[] called [the victim] to report that [Appellant] was removing [the victim's] belongings from her apartment and placing them in a truck. [The neighbor] also called the police, who arrived and left before [the victim] returned home. [Appellant] told the police he was the landlord.

When [the victim] arrived [home], she could not get inside her apartment. She [sent a text message to Appellant, asking] him to let her in [her apartment]. He replied that her things were no longer in the apartment[,] and there was "no need for her to be here." [The victim] then called the police. [The victim] also spoke

to [the landlord. The landlord] gave her the impression he did not "even have any idea what was going on."

[Appellant] placed [the victim's] belongings in a storage unit. [The landlord] provided [the victim] with the key [to the storage unit. The landlord] then "hired someone" to return [the victim's] belongings. [The victim] suffered a loss of [$10,000.00; $8,000.00] in damage to her furniture and $2,000[.00] in missing cash from her dresser.

[Appellant] testified that [the landlord] had given him a key to [the victim's] apartment on September 3[, 2019,] and [] hired him to remove [the victim's] belongings and change the locks. Neither the prosecution nor the defense called [the landlord] to testify [at trial].

The piece of paper [Appellant] gave to the police and represented to be an eviction notice appears to be a homemade, unsigned draft document dated July 31, 2019. The document bears no letterhead or official insignia and gives no indication of service. The makeshift draft eviction notice states[,] (1) [Appellant] would purchase the home "within thirty days," (2) "tenant agreements will not be honored or renewed," (3) [the victim] had to leave by September 1[, 2019], and (4) "any items left behind will be left out for trash as of September 10, 2019." [Appellant] did not offer a signed copy of the makeshift draft eviction notice at trial. [The victim] denied receiving any "formal writing" of eviction.

[The trial court] found [the victim's] testimony credible and [Appellant's testimony to be] "self-serving."

Trial Court Opinion, 9/26/22, at 2-3 (record citations and original brackets omitted).

At the conclusion of the Commonwealth's case, Appellant moved for judgment of acquittal on Counts 2 and 3. The trial court denied Appellant's motion. Ultimately, the trial court found Appellant guilty of Count 4 – criminal trespass, and not guilty of the remaining criminal charges (Counts 1, 2, and 3).

- 3 -

On January 27, 2022, Appellant was sentenced to 18 months' probation for the aforementioned conviction, and ordered to pay $757.75 in mandatory court costs. Appellant subsequently filed a timely post-sentence motion, requesting the trial court vacate his sentence and enter a judgment *non obstante veredicto* ("JNOV"), or alternatively order a new trial. On April 22, 2022, the trial court denied Appellant's post-sentence motion. This appeal followed.[3]

Appellant raises the following issues for our review:

[1.] Did the [trial] court err and abuse its discretion when it admitted hearsay evidence that was prejudicial to [Appellant]?

[2.] Was the evidence insufficient to prove beyond a reasonable doubt that [Appellant] knew he was not licensed or privileged to enter the property?

[3.] Did the [trial] court err and abuse its discretion when it denied [Appellant's] post-sentence motion for a new trial where the verdict was so against the weight of the evidence as to shock the conscience?

Appellant's Brief at 3.[4]

Appellant's first issue challenges the admissibility of evidence, for which our standard of review is well-settled. "An appellate court's standard of review of a trial court's evidentiary rulings, which include rulings on the admission of

---

[3] Both Appellant and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

[4] For purpose of disposition, Appellant's issues have been reorganized.

hearsay, is abuse of discretion." ***Commonwealth v. Rivera***, 238 A.3d 482, 492 (Pa. Super. 2020) (original brackets omitted), *appeal denied*, 250 A.3d 1158 (Pa. 2021).

"Hearsay" is defined as "a statement that [] the declarant does not make while testifying at the current trial or hearing[, and] a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c)(1) and (2). A "statement" is defined as "a person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion." Pa.R.E. 801(a). "Hearsay generally is inadmissible unless it falls within one of the exceptions to the hearsay rule delineated in the Pennsylvania Rules of Evidence." ***Rivera***, 238 A.3d at 492 (citation and original quotation marks omitted); ***see also*** Pa.R.E. 802.

Here, Appellant asserts that the victim "testified to the content of an out-of-court conversation between her and the landlord." Appellant's Brief at 25. Appellant contends that "[w]hile [the victim] did not repeat the landlord's words *verbatim*, she testified that the landlord led her to believe that he did not know why she had been evicted." ***Id.***

A review of the record demonstrates the following pertinent testimony:

| | |
|---|---|
| [Commonwealth:] | At some point did you [(the victim)] find out what had happened to your items? |
| [Victim:] | Yes. |
| [Commonwealth:] | Tell the [trial court] how you found out and where they were. |

[Victim:] When my landlord, my actual landlord came home from work, he told me that [Appellant] had given him a key to the storage [unit] for me to get my things. And I'm just like, well, why did he do that at all, he shouldn't have had the right to touch my stuff in the first place, and then he gave me the key –

[Defense Counsel:] I'm just going to object to any of the hearsay from this other individual, Your Honor. I do not believe that the person is here.

[Trial Court:] Sustained.

[Commonwealth:] And did the landlord even have any idea what was going on?

[Victim:] No.

[Defense Counsel:] Objection again, Your Honor.

[Trial Court:] Was that your [(the victim's)] impression at the time?

[Victim:] Yes.

[Trial Court:] Okay. Overruled.

N.T., 11/8/21, at 26-27.

It is clear from the record that the trial court did not permit the victim to testify regarding the out-of-court statements that landlord made to her, including his non-verbal conduct. The trial court, however, did permit the victim to testify as to the impression the victim formed based upon her interaction with the landlord. In other words, the trial court permitted the victim to testify that, based upon her interaction with the landlord, she was under the impression that that landlord did not know why Appellant had

- 6 -

removed the victim's items from her apartment and placed them in a storage unit.  First, the victim's statement regarding her impression is not hearsay because it is not an out-of-court statement, but rather, was a statement the victim made in-court while subject to cross-examination by defense counsel.  Moreover, the statement was not being offered to prove the truth of the matter asserted, *i.e.*, that the landlord did not know why Appellant acted in accordance with his conduct.  Rather, the statement was being offered to demonstrate that the victim believed, or was under the impress that, the landlord did not know the reason for Appellant's actions.  As such, we discern no error or abuse of discretion in the trial court's evidentiary ruling.

Appellant's second issue raises a challenge to the sufficiency of the evidence to support his conviction of criminal trespass, namely that the evidence was insufficient to establish the *mens rea* element of the crime.  Appellant's Brief at 14-20.

Our standard and scope of review for a challenge to the sufficiency of the evidence is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [fact-finder] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Reed*, 216 A.3d 1114, 1119 (Pa. Super. 2019).

Section 3503(a)(1)(i) of the Crimes Code states that a person is guilty of criminal trespass "if, knowing that he[, or she,] is not licensed or privileged to do so, he[, or she,] enters, gains entry by subterfuge[,] or surreptitiously remains in any building or occupied structure or separately secured or occupied portion thereof[.]" 18 Pa.C.S.A. § 3503(a)(1)(i). Thus, the Commonwealth must prove that a defendant (1) knew he or she was not licensed or privileged to enter the premises (the *mens rea* element) and (2) he or she entered the premises. *See Commonwealth v. Jackson*, 10 A.3d 341 (Pa. Super. 2010). "A person acts knowingly with respect to a material element of an offense when[,] if the element involves the nature of his[, or her,] conduct or the attendant circumstances, he[, or she,] is aware that his[, or her,] conduct is of that nature or that such circumstances exist[.]" 18 Pa.C.S.A. § 302(b)(2)(i).

"[A] bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent." *Commonwealth v. Bradley*, 232 A.3d 747, 759 (Pa. Super. 2020), *citing Commonwealth v. Namack*, 663 A.2d 191, 194 (Pa. Super. 1995); *see also* 18 Pa.C.S.A. § 304(1) (providing, "[i]gnorance or mistake as to a matter of fact, for which

there is reasonable explanation or excuse, is a defense if[] the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required to establish a material element of the offense"). "It is not necessary that the facts be as the actor believed them to be[. I]t is only necessary that he have a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent." ***Commonwealth v. Hamilton***, 766 A.2d 874, 879 (Pa. Super. 2001) (citation and original quotation marks omitted). "When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt." ***Id.*** (citation omitted). "If the Commonwealth does not rebut a defendant's good faith, reasonable mistake of fact that he was permitted to be on the property, then the evidence is insufficient to prove that the defendant knew he was not licensed or privileged to be there." ***Commonwealth v. Coniker***, 290 A.3d 725, 737 (Pa. Super. 2023).

In finding sufficient evidence existed to support Appellant's conviction of criminal trespass, the trial court explained,

> [The landlord's] provision of a key to [Appellant] - even if true - does not establish a good faith belief of license or permission to enter [the victim's] apartment to remove her belongings. [Appellant] knew [the victim] had not been evicted. The makeshift eviction notice admitted as [Commonwealth Exhibit] C-4 and [Defense Exhibit] D-7 was dated July 31, 2019. By its own (draft) terms, it advised [the victim] her belongings would not be removed until September 10[, 2019. Appellant] entered [the victim's] apartment on September 3[, 2019, a week before the deadline in the draft letter. The premature entry put [Appellant] on notice that he lacked permission. The nature and form of the document also put him on notice. [Appellant] claimed

- 9 -

he was "savvy." Yet, the piece of paper on which he purported to rely lacked a signature and any indication of administrative or judicial process. It was not reasonable for [Appellant] to rely on this deficient, unsigned, and unserved document. The fact that [the landlord] may have given [Appellant] a key under these circumstances shows, at best, that the two men were complicit.

[Appellant], moreover, had a motive to act in bad faith. He had wanted to close on the property in late August. [Appellant] further testified that a realtor [] advised [the landlord] to evict the tenants before the appraisal. These circumstances reveal that the removal of [the victim's belongings] was part and parcel of [Appellant's] plan to buy the property. [Appellant] had a motive to enter [the victim's] apartment without permission to remove her possessions and change the lock. The trial court reasonably rejected [Appellant's] exculpatory testimony as self-serving.

Trial Court Opinion, 9/26/22, at 5-6.

The record demonstrates that, at trial, the victim testified that she never "received any type of notice about [] having to vacate [her] apartment." N.T., 11/8/21, at 15, 35. The sum of her testimony was that she left for work on the day of the incident; while at work, she received a telephone call from a neighbor alerting her that Appellant was removing her possessions from the house; upon arriving home, her key no longer opened the front door of the house; and that she learned her possessions had been removed from the apartment and were being housed in a storage unit. *Id.* at 16-33.

Appellant testified that he had been hired by the landlord to remove the victim's possessions from the apartment and that he understood the victim had been evicted. *Id.* at 82, 87, 90. Appellant further testified, at trial, that on the day of the incident, the landlord "provided [him] with a key [to the victim's apartment and], upon going to the front door [of the apartment he]

- 10 -

knocked, the door was open, [he] turned the [door] knob, [and he asked,] "Hello, are you here." *Id.* at 88.

At trial, the Commonwealth introduced, and played, a recording of Appellant's interview by police on September 3, 2019. *Id.* at 61-63; *see also* Commonwealth Exhibit C-3. During that interview, Appellant explained that he had an agreement to purchase the property from the landlord, who he referred to as his cousin, and that he had been advised by his realtor that the tenants needed to vacate the property before the completion of the sale because the property was zoned as a single family residence. *See* Commonwealth Exhibit C-3. Appellant also explained that a leaking air conditioning unit in the victim's apartment recently caused water damage to the victim's apartment, as well as his apartment, which was located directly beneath the victim's apartment. *Id.* Appellant told police that he needed to renovate both apartments before the appraisal of the property was completed and, because he had no other place to live, he needed the victim to leave her apartment, so he could first renovate her apartment, then relocate to that apartment while he renovated his own apartment. *Id.* Appellant explained that the victim was refusing to leave her apartment and that she was "holding up the deal." *Id.* Appellant claimed that the victim was "a friend of a friend" that the landlord was helping by providing a place to live and that the victim did not have a lease with the landlord. *Id.* Appellant testified that the landlord was handling the tenant evictions because Appellant was not a landlord and did not understand landlord-tenant law, but then stated that he was advising

the landlord, his cousin, because Appellant was "more business savvy" and that the landlord essentially made Appellant the property manager. *Id.* Appellant told police that he believed the landlord sent a notice to the victim that she needed to vacate the apartment by September 1, 2019, but that the victim said she wasn't going anywhere. *Id.* On the day of the incident, Appellant said that he was able to enter the victim's apartment and remove her possessions because he knew the victim never locked her apartment door.

In viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, sufficient evidence was presented to prove beyond a reasonable doubt that Appellant knowingly entered the victim's apartment without license or privilege. Appellant entered the victim's apartment without proof that (1) the landlord had properly notified the victim that she was being evicted, (2) his removal of the victim's possession was the proper method for eviction, or (3) he had proper permission to enter the victim's apartment. While Appellant may not understand landlord-tenant law, and in particular the nuances of eviction, this mistake of law does not provide a defense for his actions. By his own admission, Appellant is "business savvy" and was advising the landlord throughout the real estate transaction. As such, it would be unreasonable that the receipt of an unsigned letter, informing a tenant that he or she must vacate an apartment, without proof of service would lead a "business savvy" person to believe the tenant had been properly evicted. Therefore, Appellant's sufficiency claim is without merit.

In his final issue, Appellant raises a claim that the verdict was against the weight of the evidence, for which our standard and scope of review is as follows:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial [court] had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial [court] when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the [trial] court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Horne*, 89 A.3d 277, 285 (Pa. Super. 2014), *citing Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000). A trial court abuses its discretion "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill-will." *Horne*, 89 A.3d at 285-286 (citation omitted); *see also Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (stating, "[t]he term 'discretion' imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the [trial court]"). For an appellant to prevail on a weight of the evidence claim, "the evidence must be so tenuous, vague[,] and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Sullivan*, 820 A.2d

795, 806 (Pa. Super. 2003) (citation and internal quotation marks omitted), *appeal denied*, 833 A.2d 143 (Pa. 2003).

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited.  Generally, unless the evidence is so unreliable [or] contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012), *appeal denied*, 64 A.3d 630 (Pa. 2013).

Here, Appellant challenges the weight of the evidence to support his conviction, asserting that "little weight" should be given to the victim's testimony that Appellant identified himself as the landlord, and that the actual landlord gave the victim the impression that he did not know why she had been evicted.  Appellant's Brief at 23.  Appellant argues,

> The totality of the evidence shows that [Appellant] acted innocently.  The substantial evidence of his reasonable mistake of fact is of much greater weight than the limited evidence that could support any inference of guilty knowledge.

*Id.* at 24.

In denying Appellant's post-trial motion challenging the weight of the evidence, the trial court explained,

> [The trial court] found [the victim's testimony] credible and [Appellant's testimony] was not credible.  Reasonable inferences from the evidence support a finding that [Appellant] acted in bad faith.

Trial Court Opinion, 9/26/22, at 10; **see also** N.T., 11/8/21, at 111 (stating, "[The trial court] does find [the victim's] testimony to be credible. Regarding [Appellant's] testimony, his testimony in [the trial court's] view is self-serving.").

Critical to finding Appellant guilty of criminal trespass and subsequently denying Appellant's post-trial motion raising a weight of the evidence claim was the trial court's determination of witness credibility. Here, the trial court considered the credibility of the witnesses and explained its rationale for finding Appellant's testimony not to be credible. N.T., 11/8/21, at 111-112. Appellant's assertion that the trial court erred by denying his weight claim based upon the credibility determinations assigned to the testimony provided by the evidence invites this Court to do nothing more than reassess the witness credibility and reweigh the evidence in an attempt to convince us to reach a result different than the one reached by the trial court, as fact-finder. We decline Appellant's invitation since the fact-finder, while passing on the credibility of the witnesses and the weight of the evidence, is free to believe all, part, or none of the evidence. **Commonwealth v. Dunkins**, 229 A.3d 622, 634 (Pa. Super. 2020), *aff'd*, 263 A.3d 247 (Pa. 2021), *cert. denied*, 142 S.Ct. 1679 (2022). Based upon our review of the record and the trial court's rationale for denying Appellant's post-trial motion raising a weight of the evidence claim, we discern no error of law or abuse of discretion in the trial court's determination that the verdict was not against the weight of the evidence.

Judgment of sentence affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 8/10/2023*