**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald G. HAMILTON, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 20, 2000.

Filed Jan. 11, 2001.

Ronald L. Collins, Clearfield, for appellant.

Stacy R. Parks, Assistant District Attorney, Clearfield, for Commonwealth, appellee.

Before McEWEN, P.J., EAKIN and BROSKY, JJ.

BROSKY, J.:

¶ 1 This is a direct appeal from the judgment of sentence entered on November 23, 1999, in the Court of Common Pleas of Clearfield County. For the reasons that follow, we are constrained to vacate the judgment of sentence and remand for a new trial.

¶ 2 On December 26, 1998, Appellant, Ronald G. Hamilton shot and killed Brent Krieg, the 18 year-old son of his live-in girlfriend, Sharon Krieg. Ms. Krieg was present and the only eyewitness to the killing. As a result, Appellant was charged with one count each of murder in the first degree, murder in the third degree, involuntary manslaughter, recklessly endangering another person, and terroristic threats, and two counts each of aggravated assault, and simple assault.[1]

The underlying factual background follows:

¶ 3 During the afternoon of December 26, 1998, Appellant participated in a target shoot with others at a co-worker's house. There, Appellant used the .22 caliber pistol that ultimately killed the victim. . During that time Appellant also consumed several beers. Appellant returned to his home for a short time around 5:00 p.m. While at home, he placed the gun under a cushion of a sofa in the living room. Appellant then received a telephone call from another friend (answered by the victim) who requested Appellant to come to the local fire hall. Appellant did so, and remained until approximately 8:00 p.m. Appellant again consumed alcohol at the fire hall.

---

1. 18 Pa.C.S.A. §§ 2501, 2705, 2706, 2702(a)(1)(4), and 2701(a)(1)(2), respectively.

Appellant was observed by numerous people at both the target shoot and the fire hall, who testified that Appellant did not seem upset or disturbed in any way.

¶ 4 Sharon Krieg, the victim's mother, and the Appellant's live-in girlfriend for over eight (8) years, arrived home from work at approximately 8:25 p.m. A brief argument ensued between Appellant and Ms. Krieg, regarding Ms. Krieg's paycheck. The argument escalated as Appellant complained about the dishes not being washed, and Appellant became angrier when he learned that Ms. Krieg was going to give the victim a ride to his grandmother's house. The victim was standing nearby, and was not involved in the argument, until Appellant, according to Ms. Krieg, threatened to kill both him and Ms. Krieg. Appellant went over to the couch and pulled the gun out from under the cushion, and yelled at Ms. Krieg, "Don't you believe me, don't you believe me, I'll kill him, don't you believe me?"

¶ 5 Appellant walked over to the victim, aimed the gun at his head and pulled the trigger. However, the gun did not fire and made only a clicking sound. Appellant momentarily turned away from the victim, then took a step closer, and placed the gun directly on the victim's forehead. The Appellant again pulled the trigger and a bullet fired into the victim's brain killing him. The gun's muzzle left an imprint burn on the victim's forehead.

¶ 6 Appellant testified that he attempted C.P.R. Police and paramedics arrived

within minutes, and Appellant was taken into custody. Appellant did not attempt to flee, to conceal the gun, or to deny that he shot the victim. Appellant cooperated with the police, and gave written and oral statements. A search warrant was obtained and a blood alcohol sample was taken from the Appellant approximately three and a half hours after the shooting.[2]

¶ 7 The Commonwealth introduced evidence that indicated a growing animosity between the victim and Appellant, and also evidence of an altercation between Appellant and Ms. Krieg approximately two months prior to the killing, at which time Appellant allegedly made it known to Ms. Krieg that the gun was meant for the victim. The Commonwealth also introduced evidence which tended to eliminate the possibility that anyone other than Appellant had access or control of the gun, so as to allow the gun to be loaded unbeknownst to Appellant, and further that the ammunition which killed the victim was not the same as that used by Appellant at the target shoot.

¶ 8 Appellant claimed throughout the proceedings that he mistakenly believed that the gun was in fact not loaded and that he was only trying to scare the victim who had grown too big for him to intimidate physically any longer.[3]

¶ 9 He therefore argued that did not have the requisite state of mind, i.e., the specific intent to kill required to support a conviction of first degree murder[4] or the

---

**2.** It was stipulated that Appellant's blood alcohol content at the time the sample was drawn was .134.

**3.** The victim, who along with his mother and brother had resided with Appellant since he was age 10, at age 18 had grown to approximately 6′ 2″ and weighed in excess of 300 pounds.

**4.** To find a defendant guilty of first-degree murder,

the jury must find that the Commonwealth proved beyond a reasonable doubt that (1) a human being was unlawfully killed; (2) the person accused did the killing; (3) the killing

was done with malice aforethought; and (4) the killing was deliberate and premeditated. 18 Pa.C.S. § 2502(a), (d)[.] The element that distinguishes first-degree murder from all other degrees of murder is the intent to kill, i.e., the presence of a willful, deliberate, and premeditated killing. 18 Pa.C.S. § 2502(a), (d)[.] It is well settled law in Pennsylvania that the Commonwealth may prove specific intent to kill by circumstantial evidence, and, therefore, a jury may infer the requisite malice to establish first-degree murder from the defendant's use of a deadly weapon upon a vital part of the victim's body.
*Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 400 (1999) (case citations omitted).

intent to cause serious bodily injury to support aggravated assault, nor the malice necessary to support a third degree murder conviction or aggravated assault based on recklessness.

¶ 10 Appellant's strategy was essentially two-fold: one, his mistake of fact meant that he could not have possessed the specific intent to kill or cause the victim bodily harm, nor could he have therefore possessed malice; and secondly, the circumstantial evidence showed a lack of premeditation and planning, and thus a lack of the specific intent to kill or cause bodily injury, and a lack of malice.

¶ 11 After three days of trial, on October 7, 1999, Appellant was convicted by a jury. Thereafter on November 23, 1999, Appellant was sentenced on the first degree murder conviction to a mandatory term of life in prison without the possibility of parole.[5] Appellant filed post-sentence motions which were denied, and this timely appeal followed.

¶ 12 Appellant frames four issues for our consideration.

1. Was the verdict with respect to First Degree Murder against the weight of the evidence?

5. 18 Pa.C.S.A. § 1102(a)(1).

6. In light of our disposition of Appellant's second stated issue, we decline to engage in a lengthy analysis of Appellant's weight of the evidence, prior bad acts, and cross-examination claims. We have, however, reviewed each of the issues and find them to be wholly without merit. The trial court correctly decided and adequately supported its rulings on these issues. We hereby adopt the analysis set forth in the trial court's opinion dated July 3, 2000 as our own.

7. Appellant testified regarding the target shoot, that during his last round of shooting he experienced a misfire. He then shot all of the cartridges out, including the misfire, and removed all of the shells. Trial Transcript, 10/6/99, at 130. After he was finished, Appellant testified that his friend, Ron Marsh had a misfire in his own gun, which prompted Marsh to request that Appellant try the misfired cartridge in his pistol. Appellant did so, and the cartridge did not go off. Appellant testified that he took the misfired cartridge out of his gun and, "So then I put my gun, the

2. Did the lower court err by refusing to give a mistake of fact instruction to the jury based on Appellant's mistaken belief that the gun involved was unloaded?

3. Did the lower court err by allowing the Commonwealth to introduce evidence of a prior bad act committed by Appellant approximately two (2) months preceding the incident at issue and not directly involving the ultimate victim?

4. Did the trial court err in restricting Appellant's cross-examination of a Commonwealth rebuttal witness regarding her potential motivation to testify?

Appellant's Brief at v.

■ ¶ 13 In Appellant's second claim of error, he argues that the trial court erred by refusing to charge the jury on Appellant's claimed affirmative defense of mistake of fact. We are constrained to agree.[6]

¶ 14 Consistent with Appellant's trial strategy and his testimony,[7] Appellant re- revolver, beside the tree; and it was empty. And that there was where I left the revolver was right there beside the tree." *Id.* at 131. He also testified that he did not shoot the gun again after that and he didn't check his gun when he went to put it in the car because, "I thought it was empty sitting beside the tree there." *Id.* at 132. Finally, Appellant testified that it was possible that another one of his friends, Ron Clyde, may have used the gun at the target shoot after Appellant did. *Id.* at 175.

In explaining why the gun was left in the couch, Appellant testified:

A. Well, when I come home from Garcia's, I put it there on the couch, sit it there. And when I called Todd, it was sitting there. And when Barry called me and asked me to come down [to the fire hall] because I was going to clean the gun—

Q. You were going to clean the gun?

A. Right. So I put it underneath there, and I went down to the hose house. I was going to clean it when I got back.

*Id.* at 144. Appellant was then asked to describe what happened:

quested the court to instruct the jury utilizing Pennsylvania Suggested Standard Criminal Jury Instruction § 8.304,[8] which is based upon 18 Pa.C.S.A. § 304.[9] The trial court denied Appellant's request. Trial Transcript, 10/7/99, at 4. Appellant noted his objection after the charge was given. *Id.* at 48.

¶ 15 In reviewing a claim of error by the trial court in charging a jury, we are mindful that:

[I]n charging the jury, the trial court is free to use its own form of expression; the only issue is whether the area is adequately, accurately and clearly presented to the jury. Moreover, when evaluating the charge, we must view the charge as a whole.

*Commonwealth v. Cottam,* 420 Pa.Super. 311, 616 A.2d 988, 1000 (1992), *appeal denied,* 535 Pa. 673, 636 A.2d 632 (1993)

And I went over to get the gun. I said, this will—I'm going to even this up. So when I walked back over, I had the gun; and I pointed it at him. I walked up to him and pointed it at him thinking it was unloaded. I just wanted to scare him. I got over to him, and the first shot went click.

*Id.* at 144. Appellant testified about his intent at the time, "My intent was just to scare him and that there, not to shoot him and that there. I didn't want none of that." *Id.* at 145.

Appellant was asked what he did with the gun after the shooting, and he replied:

A. I put it right there on the couch when I sat down. I just left it there.
Q. Why did you sit down?
A. Shock, because I couldn't believe it.
Q. Couldn't believe what?
A. That I shot him.
Q. Why was that?
A. The gun should have been empty. There shouldn't have been no ammo in it.

*Id.* at 147.

8. Pa. SSJI (Crim) 8.304 reads as follows:
IGNORANCE OR MISTAKE OF FACT
(1) One of the material elements of the crime of _____ which the Commonwealth must prove beyond reasonable doubt is that the defendant (intended _____) (knew _____) (believed _____) (recklessly _____) (negligently _____). The defendant claims that this element has not been proven because at the time of the alleged offense he was reasonably (ignorant) (mistak-

(citations omitted). "The key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in its deliberations." *Commonwealth v. Sneeringer,* 447 Pa.Super. 241, 668 A.2d 1167, 1171 (1995).

It is well established that a bona fide, reasonable mistake of fact may, under certain circumstances, negate the element of criminal intent. 18 Pa.C.S.A. § 304 (providing, inter alia, that ignorance or mistake as to a matter of fact, for which there is a reasonable explanation or excuse, is a defense if "the ignorance or mistake negatives the intent, knowledge, recklessness, or negligence required to establish a material element of the offense"); *Commonwealth v. Compel,* 236 Pa.Super. 404, 344 A.2d 701 (1975); *Commonwealth v. Bollinger,* 197

en) concerning the facts in that he (_____).
(2) (Ignorance) (Mistake) as to a matter of fact for which there is a reasonable explanation or excuse is a defense if it negates the (intent) (knowledge) (belief) (recklessness) (negligence) required to establish a material element of the crime. Thus you should consider the evidence tending to show that the defendant was reasonable (ignorant) (mistaken) concerning the facts along with the other evidence in determining whether the Commonwealth has proven the required (intent) (knowledge) (belief) (recklessness) (negligence).
(3) You cannot convict the defendant unless you are satisfied beyond reasonable doubt that [the defendant was not (ignorant) (mistaken) as to the facts] [or] [the defendant's (ignorance) (mistake) did not prevent or eliminate the required _____] [or] [there is no reasonable explanation or excuse for the defendant's (ignorance) (mistake)].

9. 18 Pa.C.S.A. § 304 provides:
§ 304. Ignorance or mistake
Ignorance or mistake as to a matter of fact, for which there is reasonable explanation or excuse, is a defense if:
(1) the ignorance or mistake negatives the intent, knowledge, belief, recklessness, or negligence required a establish a material element of the offense; or
(2) the law provides that the state of mind established by such ignorance or mistake constitutes a defense.

Pa.Super. 492, 179 A.2d 253, 255 (1962). "It is not necessary that the facts be as the actor believed them to be; it is only necessary that he have 'a bona fide and reasonable belief in the existence of facts which, if they did exist, would render an act innocent.' *Commonwealth v. Lefever*, 151 Pa.Super. 351, 30 A.2d 364, 365 (1943). *See generally, Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)." *Commonwealth v. Compel, supra*, at 702–03. When evidence of a mistake of fact is introduced, the Commonwealth retains the burden of proving the necessary criminal intent beyond a reasonable doubt. *Commonwealth v. Cottam*, 420 Pa.Super. 311, 616 A.2d 988, 1000–01 (1992). In other words, the Commonwealth must prove either the absence of a bona fide, reasonable mistake, or that the mistake alleged would not have negated the intent necessary to prove the crime charged.

*Commonwealth v. Namack*, 444 Pa.Super. 9, 663 A.2d 191, 194–195 (1995) (footnotes omitted).

¶ 16 In explaining its reasoning for denying Appellant's requested instruction, the trial court relies on *Cottam* for the proposition: "The Superior Court has specifically held *that the failure to give a mistake of fact instruction does not constitute error.*" Trial Court Opinion, 7/3/00, at 5 (emphasis supplied). However, a closer reading of *Cottam* reveals that the trial court completely misconstrues its holding. What we held in *Cottam*, was that "the trial court [*did not*] err[ ] in *failing to instruct* the jury *that the burden of proving absence of mistake of fact rests with the Commonwealth.*" *Id.* at 1000 (emphasis supplied). The trial court's interpretation of the holding in *Cottam* is erroneous. In *Cottam*, the trial court in fact gave the § 8.304 mistake of fact instruction, but did not go as far as requested by Cottam, to address the related burden of proof. Indeed, the actual

instruction given to the jury in *Cottam* (compare to fn. 8 *supra.*) reads:

> *One of the material elements of the crime of murder in the third degree is malice. Voluntary manslaughter is provocation and heat of passion. Involuntary manslaughter is recklessness or gross negligence. Recklessly endangering another person is recklessness and endangering the welfare of children is knowledge. The Commonwealth must prove each of these elements beyond a reasonable doubt.*
>
> *The Defendants claim that each of these elements have not been proven because at the time of the alleged offense, they were under a mistaken belief that a supreme being would provide assistance during the period of November 22, 1988 to January 4, 1989.*
>
> *Ignorance or mistake as to a matter of fact which there's reasonable explanation or excuse is a defense if the ignorance or mistake negates intent, knowledge belief, recklessness or negligence required to establish a material element of the offense.*
>
> *Therefore, you must consider the evidence tending to show that the Defendants were mistaken concerning the facts, along with all the other evidence, in determining whether the Commonwealth has proven the required malice, knowledge, recklessness and gross negligence as to each of the alleged crimes.*
>
> . . .
>
> It is not Defendant's burden to prove that the Defendant is not guilty. Instead, it is the Commonwealth that always has the burden of proving each and every element of the crime charged and that Defendant is guilty of that crime beyond a reasonable doubt.
>
> The person accused of the crime, the Defendant, is not required to present evidence or prove anything in the De-

fendant's defense. If the Commonwealth's evidence fails to meet its burden, then your verdict must be not guilty. On the other hand, if the Commonwealth's evidence does prove beyond a reasonable doubt that Defendant is guilty, then your verdict should be guilty. . . .

Stenographic Record, Vol. II, at 1201–1208.

We find that the *aforementioned instruction clearly communicated to the jury that the burden of proving* each element beyond a reasonable doubt *remained with the Commonwealth and that a determination that appellants were not acting under a mistake of fact was necessary to a finding of their guilt.* Consequently, appellants' claim must fail.

*Cottam,* 616 A.2d at 1001 (emphasis supplied). We held, based upon the instructions that actually were given, that the Commonwealth's burden of proof was sufficiently addressed throughout the charge, and the additional specific instruction regarding burden of proof requested by the defense was not required. Thus, the trial court's reliance on *Cottam* is misplaced.

¶ 17 Our independent scrutiny of the entire jury charge reveals no reference whatsoever to the defense's claimed mistake. The trial court states that "in the case at bar, the instructions provided were legally correct and explained the applicable principles of law," and that "given the detailed instructions provided by the Court combined with the Defense's many references to the Defendant's alleged belief that the pistol was unloaded at trial, the 'mistake of fact' instruction was unneeded and the failure to provide it does not constitute error entitling Defendant to a new trial." Trial Court Opinion, 7/3/00, at 5–6. We must disagree.

¶ 18 Indeed, the trial court recognizes the significance of the jury's acceptance of Appellant's affirmative defense when it states:

Obviously, if this belief were true, Defendant did not expect the gun to discharge and he would lack the required "intent to kill" necessary to establish First Degree Murder. . . . [H]ad the jury accepted the Defendant's contention that he believed the weapon was unloaded, they would have returned a not guilty verdict on the First Degree Murder charge for the Commonwealth's failure to prove the required "intent to kill". In this instance malice would also have been absent and the jury would have returned a guilty verdict on the Involuntary Manslaughter charge[.]

*Id.* at 5. Thus, it also can hardly be argued that the requested charge is irrelevant, as the trial court later suggests when it states that it did not err in refusing to give the instruction because, "[a] court owes a duty to the jury to not confuse it with irrelevant instructions", citing to *Commonwealth v. Kwatkoski,* 267 Pa.Super. 401, 406 A.2d 1102 (1979). *Id.* at 5–6. While the proposition cited is, generally, a correct statement of the law, it has no application in the instant case.[10]

¶ 19 Inasmuch as Appellant has presented evidence that supports his claimed defense, (*see* fn. 7 *supra.*), regardless of whether the facts are as he believes them to be, *Namack, supra.,* Appellant is entitled to the jury instruction he requested. Our Supreme Court has stated:

A trial court may not refuse to charge the jury on the elements of a defense, where the defense is supported by evidence in the record. *Commonwealth v. Brown,* 491 Pa. 507, 512, 421 A.2d 660, 662 (1980). *Where there is evidence to support a claimed defense, it is "for the trier of fact to pass upon that evidence and improper for the trial*

---

10. We also note that the trial court did not find it too confusing to give the intoxication

charge requested by Appellant.

*judge to exclude such consideration by refusing the charge." Id.*

*Commonwealth v. Kyslinger,* 506 Pa. 132, 484 A.2d 389, 391 (1984) (emphasis supplied).

¶ 20 Furthermore, as we noted in *Cottam,*

> In any criminal prosecution, the Commonwealth has the unshifting burden to prove beyond a reasonable doubt all elements of the crime charged. The burden is neither increased nor diminished when a defendant attempts to disprove an element of the crime by introducing an affirmative defense. Accordingly, *when charging a jury, a trial judge must communicate to the jury that when evidence of an affirmative defense is offered, the Commonwealth still has the burden to prove each element of the crime charged beyond a reasonable doubt.* Thus, the burden never shifts to the defendant. *Moreover, the trial judge must state that the jury's determination that the affirmative defense has not been established is essential to finding that the Commonwealth has met its burden.*

*Commonwealth v. Cottam,* 616 A.2d at 1000–1001 (citations omitted) (emphasis supplied).

¶ 21 Thus we conclude, as we must, that Appellant is entitled to the mistake of fact jury instruction, and the trial court's failure to do so amounts to error requiring a new trial.

¶ 22 Judgment of sentence vacated. Case remanded for new trial. Jurisdiction relinquished.

¶ 23 McEWEN, P.J., concurs in the result.