J-A12015-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADAM ABDUR-RAHIM | : | |
| | : | |
| Appellant | : | No. 1060 EDA 2023 |

Appeal from the Judgment of Sentence Entered March 31, 2023
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000692-2019

BEFORE: PANELLA, P.J.E., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.: **FILED AUGUST 20, 2024**

Adam Abdur-Rahim ("Appellant") appeals from the aggregate judgment

of sentence[1] following his convictions for numerous offenses including robbery

and kidnapping. We affirm.

The trial court summarized the factual history of this matter as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

[1] Two months after Appellant filed his timely notice of appeal in this matter, the trial court purported to amend the sentence via order entered on August 25, 2023. However, since an appeal had been taken, the trial court lacked the authority to amend its initial sentencing order, and therefore this amendment was a legal nullity. **See** 42 Pa.C.S.A. § 5505 ("Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed"). While this Court may sua sponte address matters concerning the legality of a sentence, we decline to do so here because we lack either the trial court's rationale or the advocacy of the parties as to this issue.

On November 18, 2019, [Appellant] and six others attempted to take control of the Administrative Center ("Clubhouse") of the Pine Ridge Residential Community ("Pine Ridge") located in Lehman Township, Pike County, Pennsylvania, by force. At approximately 12:45 p.m., the Pennsylvania State Police barracks in Blooming Grove, Pike County, received a call indicating that five males with firearms, later identified as Sekou Rashid-Abdullah, Sushane Adams-Heylinger, Musa Abdur-Rahim, Troy Sutton, and the Appellant (collectively, "Assailants"), had smashed windows to gain access to the Clubhouse and that office workers Shirley Kennedy ("Kennedy"), Shante Fountaine ("Fountaine"), and Community Manager William White ("White") were trapped inside. Evidence presented at trial showed that Anthony Bonito ("Chief Bonito"), Chief of Public Safety for Pine Ridge, was engaged in the community at the time and that John Derbyshire ("Derbyshire"), a Public Safety Officer, was inside the Clubhouse when the assault began.

As the Assailants forced entry to the upper level of the two-level Clubhouse, Kennedy, Fountaine, and White sheltered inside White's office located in the lower level. Meanwhile, Derbyshire secured the lower level and verbally confronted the Assailants through a heavy door as they attempted to force entry to the lower level via an indoor stairway. The Assailants then exited the upper level of the Clubhouse, forced entry to the lower level from the outside, confronted, disarmed, and forcibly detained Derbyshire inside the Public Safety Office. At some point, Chief Bonito returned and confronted the Assailants from just outside the Public Safety Office door, but retreated upon realizing that Derbyshire was being forcibly detained within. As Chief Bonito retreated to observe, report to, and eventually assist the Pennsylvania State Police, the Assailants ransacked the Public Safety Office, taking various items, including but not limited to body armor, weapons, vehicle keys, and walkie-talkies, before exiting with Derbyshire and returning to the Clubhouse parking lot. The Assailants then commandeered Derbyshire's truck, emptied it of his personal belongings, and attempted to leave Pine Ridge with Derbyshire in tow using their own two vehicles, Derbyshire's private vehicle, and a Pine Ridge Public Safety vehicle using keys taken from the Public Safety Office. The Assailants, including the Appellant, then attempted to drive out of Pine Ridge using the only available road but were blocked by Pine Ridge maintenance workers and eventually taken into custody by responding Pennsylvania State Police Troopers.

Trial Court Opinion, 8/25/23, at 1-2 (footnote and repetition of amounts in numerical form omitted).

Appellant was subsequently charged with thirty-five separate crimes relating to his role in the incident. The Commonwealth filed a notice to jointly try Appellant with his co-defendants.

The parties first attempted to select a jury on September 13, 2021. After several jurors were struck for cause, the defense attorneys made a joint motion to dismiss the panel. The court granted the motion and continued jury selection for a later date.

Following resolution of numerous pretrial motions filed by Appellant, the parties selected a jury and trial was set to begin on January 26, 2023. Several days before, the Commonwealth filed a motion in limine to preclude evidence or testimony concerning ownership of the lands upon which Pine Ridge was located, asserting that such evidence was irrelevant to the charges and was likely to confuse the jury. The motion was filed in anticipation of a claim of right defense—that the defendants were rightfully entitled to retake the land on behalf of Tonia Scott, a woman proclaiming to own the land based on her native ancestral heritage. The Commonwealth relied on **Commonwealth v. Dombrauskas**, 418 A.2d 493 (Pa. Super. 1980), for the principle that, even if Tonia Scott were the rightful owner of the land, she would not be entitled to employ force to retake property under a claim of right. After argument, the court granted the motion to preclude such evidence.

Trial began on January 26, 2023. On February 3, 2023, the jury delivered a verdict finding Appellant guilty of 27 offenses: one count each of kidnapping, criminal conspiracy to commit kidnapping, false imprisonment, and unlawful restraint, six counts of robbery, one count each of robbery of a motor vehicle, criminal conspiracy to commit robbery, theft by unlawful taking, criminal attempt to commit theft by unlawful taking, criminal conspiracy to commit theft by unlawful taking, burglary, criminal conspiracy to commit burglary, three counts of terroristic threats, two counts each of simple assault and recklessly endangering another person, and two firearms offenses.

On March 31, 2023, the trial court sentenced Appellant to an aggregate sentence of 302 to 829 months' incarceration. This timely appeal followed.

Preliminarily, before analyzing the merits of any issues, we must first determine whether the issues have been properly preserved for our review.

First, this Court has found waiver in cases of voluminous concise statements:

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise. We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many

- 4 -

issues impossible. Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues.

*Tucker v. R.M. Tours*, 939 A.2d 343, 346 (Pa. Super. 2007) (citations and some quotation marks omitted) (finding waiver of issues where appellants filed a concise statement consisting of sixteen pages, 76 paragraphs, and exhibits). Appellant's statement is not concise as it raises 25 issues over the span of 4 pages.

The scattered presentation of Appellant's issues clearly led to some confusion with the trial court regarding what issues Appellant was actually raising. *See* Trial Court Opinion, 8/25/23, at 5 (noting that due to the extensive number of issues raised, and the vagueness of those issues, that the court was "unable to adequately address them" and therefore only addressed those issues the court could clearly identify); *see also id*. at 17 ("Due to the vagueness and lack of substance of [several allegations of error or abuse of discretion], we are unable to fully address them").

On appeal, Appellant has filed a brief that is also difficult to follow. Appellant raises the following 21 issues in his statement of questions presented:

1. The Honorable trial court erred and abused its discretion by denying the change of venue/venire motion.

2. The Honorable trial court erred and abused its discretion by refusing to recuse itself from the trial.

3. Th[e] Honorable trial court erred and abused its discretion by not allowing the "mistake of fact" jury instruction.

4. Th[e] Honorable trial court erred and abused its discretion by allowing the Commonwealth to file several pre-trial motions after its ordered due date.

5. The Honorable trial court erred and abused its discretion by granting the motion to limine for race and religion for the voir dire.

6. The Honorable trial court erred and abused its discretion by allowing juror #6 to be empaneled, although he admitted to being hearing impaired.

7. The Honorable trial court erred and abused its discretion by allowing juror #7 to be empaneled, although she admitted seating on the jury would cause an undue hardship to herself and her family.

8. The Honorable trial court erred and abused its discretion by allowing juror #12 to be empaneled.

9. The Honorable trial court erred and abused discretion by granting the motion [in limine regarding ownership of the land], stating that the property in question is owned by Pine Ridge Estates with no evidence of any such ownership.

10. The Honorable trial court erred and abused its discretion by issuing a refusal of acknowledgment regarding Tonia Scott, when she is an integral part of the case at hand.

   a. Refusal of allowing Tonia Scott to testify.

   b. Refusal to acknowledge her as unavailable, once declaring she was unable to testify.

   c. Not allowing video of Tonia Scott to be shown to the jury after the Court made her unavailable by court determination.

11. The Honorable trial court erred and abused its discretion by admitting evidence, but not publishing a single piece of defense's admitted evidence to the jury.

12. The Honorable trial court erred and abused its discretion by allowing the employment contract on which the actions were based as admissible, but not allowing publishing to the jury.

13. The Honorable trial court erred and abused its discretion by denying questioning on the formation of all entities involved in the contract.

14. The Honorable trial court erred and abused [its] discretion by denying testimony as well as emails and mentions of Tonia Scott received by [Appellant].

15. The Honorable trial court erred and abused its discretion by allowing the Commonwealth to move a judicial notice of recognized tribes into evidence even though the Commonwealth's order that was granted stated there would be no mention of tribes or tribal rights.

16. The Honorable trial court erred and abused [its] discretion by granting the motion to exclude, which denied the defense the right to call Trooper Aaron Brunner and Trooper Matthew Jones as witnesses for the defense even though they were among the arresting officers and personally interrogated [Appellant].

   a. Prevented defense from having [Appellant]'s confession admitted.

   b. Denied defense's motion for photos from interrogation, after granting motion to exclude calling troopers.

17. The Honorable trial court erred and abused its discretion by hearing and admitting trooper testimony that was contradictory to original police reports and sworn statements, without allowing for expansion or cross-examination from the defense on such errors.

18. The Honorable trial court erred and abused its discretion by stating "the Federal Rules of Evidence" don't apply when the defense was trying to establish the legitimacy of [Appellant]'s security business.

19. The Honorable trial court erred and abused [its] discretion by continually repeating that the court was time conscious of a trial lasting only a week, which led the defense to believe the orders

were granted/denied in favor of a short trial, rather than a fair and impartial one.

20. The Honorable trial court erred and abused its discretion by allowing testimony of witnesses and victims when it was evident that they were not able to clearly recall the details after having nearly four (4) years lapsed since the incident occurred.

21. The Honorable trial court erred and abused [its] discretion by allowing victim testimony to allege that [Appellant]'s actions "killed" one of the victims when not only was that not a charge, but there has never been any indication, allegation, or evidence of any correlation between the victim's death and the incident.

Appellant's Brief, at 5-9 (unnecessary capitalization omitted).

However, Appellant presents only 6 issue sections in the argument section of his brief. Many of the above issues are undeveloped or entirely abandoned in the argument section. Specifically, issue statements 18 through 21 were entirely abandoned. Other than simply repeating issue statements 16 and 17 verbatim in the argument section for issue 4, those issues are otherwise entirely undeveloped and abandoned. Similarly, other than copy and pasting issue statement 15 into the argument section for issue 9, regarding the motion in limine as to ownership, issue 15 is otherwise abandoned. Issue statements 11 through 14 were simply included verbatim in the argument section regarding Tonia Scott. They are not otherwise expanded on as their own separate issues. Finally, issue statement 5 was entirely abandoned in the argument section of the brief. To the degree these issues have been abandoned and/or undeveloped, we find them waived. To the degree the trial court was able to address any of the other issues raised,

we will address those claims in the order in which they are raised in his argument section.

Appellant first contends the court erred in denying his motion for change of venue. Our standard of review relating to the trial court's denial of a motion for a change of venue "is whether there has been an abuse of discretion on the part of the trial judge." *Commonwealth v. Devries*, 112 A.3d 663, 666 (Pa. Super. 2015) (citation omitted). It is axiomatic that "[v]enue or venire may be changed by th[e] court when it is determined after hearing that a fair and impartial trial cannot otherwise be had in the county where the case is currently pending." Pa.R.Crim.P. 584(A). The Pennsylvania Supreme Court has stated "the trial court is in the best position to assess the atmosphere of the community and to judge the necessity of any requested change." *Commonwealth v. Briggs*, 12 A.3d 291, 313 (Pa. 2011) (citation omitted).

Further, in addressing this type of claim, this Court has observed the following:

> For pre-trial publicity to be presumptively prejudicial, a defendant must prove, inter alia, that the publicity was so extensive, sustained, and pervasive without sufficient time between publication and trial for the prejudice to dissipate, that the community must be deemed to have been saturated. The publicity must be . . . inflammatory and slanted toward conviction rather than factual and objective. Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue is warranted if the passage of time has sufficiently dissipated the prejudicial effects of the publicity.

*Commonwealth v. Tanner*, 205 A.3d 388, 393 (Pa. Super. 2019) (citations, internal quotation marks, and brackets omitted).

Appellant spends a majority of his argument imputing bias to the jury based upon a panel that was dismissed approximately eighteen months earlier. *See* Appellant's Brief, at 24-28. As to the second and final jury pool, Appellant argues as follows:

> Just as in September 2021, the Pike County community was unable to pick a jury pool that was able to guarantee the defendants received a fair and impartial trial. Based on the people pooled in January 2023, there were still obvious biases held against these defendants. Many in the January 2023 panel had seen the extensive news reports on these individuals, and many had already decided the defendants were "crazy" and guilty of these charged crimes. Many in the jury pool live in either Saw Creek or Pine Ridge or know someone who does. Many in the jury pool will never believe a Muslim's testimony and will believe the police over a nonpolice officer simply because of his or her occupation. Many in the jury pool believe these defendants were outsiders, they belong to a different race and a different religion than many in the community, and, thus, many have already decided their guilt.
>
> The jury panel from January 2023, also indicated that they were aware of the allegations. There was an attorney and professor who also became the jury foreman. He stated that he followed the case closely and discussed this case with his students. The testimony from the voir dire in September 2021 and January 2023 establish that this case received a great deal of publicity in Pike County, and the jury pool was unable to base their decision solely on the information and evidence presented to them during the trial. Additionally, the trial courts failure to acknowledge this fact was a grave disservice to the defendants and an abuse of its discretion.

*Id*. at 29-30 (footnote and unnecessary capitalization omitted).

Appellant initially filed a motion for change of venue on April 2, 2020, which was denied. Two years later, and after the initial jury panel was dismissed, Appellant filed an amended motion for change of venue. In rejecting the instant claim, the trial court recounted that at a hearing on Appellant's motion for change of venue, Appellant offered only argument, no testimony or other evidence. **See** Trial Court Opinion, 8/25/23, at 6. It concluded Appellant "failed to show that a fair and impartial jury could not be had in Pike County, and failed to show that pretrial prejudice should be presumed …". **Id**.

We conclude the court did not abuse its discretion in denying Appellant's motion for change of venue. Other than generically imputing biases to "many" jury members, notably without specifying any particular jurors and without any citation to the record for these accusations, Appellant provides no actual indication of what number or percentage of venirepersons were unable to put aside the information they learned and decide the case fairly.

Even if we assume *arguendo* that there was pre-trial publicity that was presumptively prejudicial, Appellant has simply not shown that this notoriety did not dissipate in the three years between the time of the incident and commencement of trial, or the year and one-half between the first jury selection and the latter. **See, e.g.**, **Commonwealth v. Walter**, 119 A.3d 255, 281 (Pa. 2015) (finding that "the 11–month period between the latest of

the submitted publicity and [a]ppellant's trial was sufficient to dispel any prejudice against her") (citation omitted).

Appellant concedes he has waived his second issue related to recusal. As such, we do not address that issue.

Issues three and nine relate to Appellant's mistake of fact defense. Specifically, Appellant argues the trial court erred by not allowing a "mistake of fact" jury instruction. *See* Appellant's Brief, at 33-36. Further, Appellant argues the court erred in granting the Commonwealth's motion in limine concerning evidence of Tonia Scott's purported ownership of the lands upon which Pine Ridge was established, and then stating that the property is owned by Pine Ridge Estates, without allowing any evidence regarding Appellant's mistake of fact as to ownership of the land. *See id*. at 43-45. As both issues relate to Appellant's mistake of fact defense, we address them together.

We review the admission or exclusion of evidence under the following standard:

> It is well settled that evidentiary rulings are within the sound discretion of trial courts. Accordingly, when a party adverse to a trial court's evidentiary ruling seeks appellate review of that determination, that party carries a heavy burden to demonstrate that the trial court abused its discretion. An appellant cannot meet this burden by simply persuading an appellate court that it may have reached a different conclusion than that reached by the trial court; rather, to overcome this heavy burden, the appellant must demonstrate that the trial court actually abused its discretionary power.

*Commonwealth v. DiStefano*, 265 A.3d 290, 297 (Pa. 2021) (citations and quotation marks omitted).

- 12 -

Similarly, "[o]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Yale**, 150 A.3d 979, 983 (Pa. Super. 2016) (citation omitted).

Here, the trial court held that evidence concerning historical ownership of the land was irrelevant. **See** Trial Court Opinion, 8/25/23, at 8. Under Pennsylvania law, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). As a general rule, all relevant evidence is admissible and all irrelevant evidence is inadmissible. **See** Pa.R.E. 402. However, even relevant evidence may be excluded if its probative value is outweighed by the danger of confusing the issues, misleading the jury, or causing undue delay. **See** Pa.R.E. 403.

The trial court considered this Court's decision in **Dombrauskas** in making its relevance determination. **See** Trial Court Opinion, 8/25/23, at 8. There, the defendant, believing that he was swindled during a card game, forcibly took money from the victim at knifepoint. At trial, the defendant sought a jury instruction stating he "could not be guilty of theft if he believed that he had a right to retake money taken from him by cheating in a game of cards." **Dombrauskas**, 418 A.2d at 496. The trial court denied the request. We affirmed the denial on appeal, reasoning as follows:

- 13 -

[A] claim of right defense is not available to one who employs force or stealth to recoup money lost in a gambling game or to collect an unliquidated debt. Disputed claims of this type are better resolved in a court of law than by violence or stealth.

*Id*. at 497 (citations omitted). Accordingly, we held:

the proper forum for resolving gambling disputes is a court of law pursuant to legal process. If one resorts to his own resources to take money physically from another in such instances, public policy precludes the assertion of a claim of right defense to a charge of theft by unlawful taking.

*Id*.

Here, the trial court extended the holding in *Dombrauskas* to apply to real property, stating as follows:

[F]actual evidence on the ownership of land upon which Pine Ridge was established had no bearing upon the crimes alleged and [] the Appellant's understanding of that fact could not negate the intent required to establish any element of any charge against him. In other words, the ownership of the land upon which Pine Ridge is situate[d] is irrelevant because the Appellant was not privileged to take the action(s) he was accused of, even if he was the rightful owner of Pine Ridge.

*See* Trial Court Opinion, 8/25/23, at 8. Accordingly, the court maintained it properly granted the Commonwealth's motion in limine as to the ownership of the lands and denied Appellant's mistake of fact instruction request. Appellant does not respond to the court's reliance on *Dombrauskas* at all.

Instead, Appellant supports his argument that the denial of his request for a mistake of fact jury instruction was an abuse of discretion by citing to *Commonwealth v. Scott*, 73 A.3d 599 (Pa. Super. 2013) and *Commonwealth v. Hamilton*, 766 A.2d 874 (Pa. Super. 2001). Appellant's

- 14 -

reliance on these cases is misplaced. In those cases, the holdings were dependent on the notion that the mens rea of the charged crimes could be negated by the defendant's defense theory. *See Scott*, 73 A.3d at 603; *Hamilton*, 766 A.2d at 879. In other words, it was necessary that the defendant have a reasonable belief in the existence of facts which, if they did exist, would render an act innocent. *See Scott*, 73 A.3d at 603; *Hamilton*, 766 A.2d at 879. That is not the case here, where, regardless of ownership of the property, Appellant was not entitled to kidnap, rob, assault, and possess a firearm, even if his mistake of fact defense was believed.

On review, we agree with the trial court that the evidence was irrelevant. Notably, Appellant does not discuss any of his convictions as it relates to this issue.[2] Accordingly, Appellant does not assert that any particular element or the mens rea for any conviction would be negated with this information, even assuming he reasonably believed Tonia Scott owned the property in question. Nor does he argue this information would be "a fact of consequence" regarding any of his convictions. Pa.R.E. 401(b).

_____

[2] In the last sentence of his argument for his issue related to the jury instruction, Appellant briefly asserts "in the alternative, the mistake of fact does apply specifically to the charge of criminal trespass, and therefore, it was an abuse of discretion by the trial court to not give the instruction." Appellant's Brief, at 36. Appellant does not indicate how the mistake of fact would apply to only this charge, nor otherwise expand on this assertion at all. We therefore find this claim waived. We further note, Appellant was not ultimately convicted of trespass. Accordingly, we cannot find Appellant was prejudiced by any alleged error in this regard.

Appellant has simply made no connection between the evidence of ownership of Pine Ridge and the elements of the crimes of which he was convicted. We will not develop arguments on behalf of an appellant. ***See Coulter v. Ramsden***, 94 A.3d 1080, 1088 (Pa. Super. 2014). "While this Court may overlook minor defects or omissions in an appellant's brief, we will not act as his or her appellate counsel." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) (citation omitted) Accordingly, Appellant is not entitled to relief on these claims.

In his next issue, Appellant argues the trial court erred and abused its discretion by allowing the Commonwealth to file several pretrial motions after its ordered due date. Notably, Appellant only discusses one motion in his argument—a motion that denied the defense the right to call Trooper Aaron Brunner and Trooper Matthew Jones as witnesses. ***See*** Appellant's Brief, at 37. Further, Appellant does not discuss any actual issue caused by the untimeliness of the motion. Rather, he argues the court erred in its decision to grant the motion in general.

Relevantly, on January 30, 2023, during the Commonwealth's case-in-chief during trial, the Commonwealth filed a motion to "bar statements of defendant & video recording." ***See*** Commonwealth Motion, 1/30/23. Specifically, the Commonwealth asserted the following:

> 1. Pennsylvania State Police Troopers Aaron Brunner and Matthew Jones interviewed [Appellant] after his arrest and during the investigation into this matter at the Pennsylvania State Police Station at Blooming Grove.

2. That interview was audio and video recorded.

3. The Commonwealth seeks to bar [Appellant] from examining Trooper Brunner or Trooper Jones regarding the interview and any introduction into evidence or display to the jury of the video/audio recording of the interview.

4. That in the event the Commonwealth does not introduce the statements during the Commonwealth's presentation of evidence, the Commonwealth seeks to bar [Appellant] from admitting into evidence the video-recorded interviews.

5. The Commonwealth believes that if [Appellant] seeks to examine Trooper Aaron Brunner or Trooper Matthew Jones about the contents of the recorded interviews and/or play the recorded interviews, that said evidence constitutes hearsay and should be barred by Pa. R.E. 802. *Commonwealth v. Benson*, 10 A.3d 1268 (Pa[.] Super. 2010).

6. The Commonwealth is aware of no exception to the general prohibition against the introduction of hearsay evidence to permit the Defendant(s) to introduce the statement into evidence. See Pa. R.E. 803.

7. That to introduce the video/audio recording or testimony of Trooper Brunner or Jones after [Appellant] has testified or during his testimony would be inconsistent with Pa. RE 613 (relating to admission of prior consistent statements).

8. The admission of such statement, even should the Commonwealth suggest fabrication or bias in cross examination, would offend Rule 613 as the motive to make such a statement had already arisen since [Appellant] had already been arrested. *See Commonwealth v[.] Hutchinson*, 556 A.2d 370 (Pa. 1989).

*Id*. at 1-2. Based on the above representations, the Commonwealth requested the court bar Appellant from examining the Troopers about his statement or introducing video/audio recording of the statement. *See id*. at 2. On that

same date, outside the presence of the jury, the court heard argument on the Commonwealth's motion.

The Commonwealth argued that since the video was not offered into evidence by the Commonwealth in its case-in-chief, that the video should be precluded as hearsay based upon this Court's opinion in **Benson**, **supra.** In **Benson**, we held "[w]here a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts, such testimony is clearly offensive to the hearsay rule." **Id**. at 1274-75.

Appellant's counsel argued the statement and/or recording of the statement should come in under the present sense impression and then-existing mental, emotional, or physical condition exceptions to the hearsay rule. **See** N.T., 1/30/23, at 210; **see also** Pa. R.E. 803(1), (3). Specifically, counsel argued Appellant's state of mind was relevant pursuant to Pa. R.E. 804, which provides exceptions to the rule against hearsay. **See id**. Alternatively, counsel argued the statement should come in as a prior consistent statement, in the event the defense should need to rehabilitate Appellant. **See** N.T., 1/30/23, at 210; **see also** Pa. R.E. 613(c). After taking the matter under advisement, the court granted the motion the next day.

Appellant argues the court's decision denied him the right to call the troopers as witnesses, thereby preventing him from asking questions regarding his confession. Further, Appellant asserts the trial court

compounded its error by denying a defense motion for photos from the interrogation video to be admitted.

In addressing this issue, the trial court insists Appellant misunderstood the court's decision on the motion. We agree. In granting the Commonwealth's motion, the trial court did not outright preclude Appellant from calling the troopers as witnesses. Rather, the court precluded the admission of the video into evidence based on it being hearsay, because the video had not been presented or authenticated by the Commonwealth during its case-in-chief. As the trial court states, Appellant could have called the troopers to authenticate the video so that it could have been entered into evidence.

We further disagree with Appellant's insinuation that it was biased for the court to grant the Commonwealth's motion to exclude the video but deny a defense motion to show photographs from the same video. First, no such motion was ever made. Rather, Appellant's trial counsel simply asked for clarification on the impact of the court granting the Commonwealth's motion, and if the court's decision would prevent the defense from showing still photographs from the video. The court clarified that it was possible counsel could determine some other way for the evidence to come in, but that at that time, the videos were still hearsay, stating as follows:

> I just want to say in a general way that it's clear to the [c]ourt that at the present time those statements would be hearsay, and I didn't find it to be a present sense [impression] so, but I will leave it up to counsel because otherwise you know I'm not going to be able to tell you how you can present that or what you can

present, but if it's presented the Commonwealth has an objection, we'll address it, if not you can proceed accordingly.

N.T., 1/31/23, at 6.

We agree that it appears Appellant misunderstood the effect of the trial court's decision on this motion. After a review of the record, we cannot say the trial court abused its discretion. Accordingly, this issue is without merit.

Next, Appellant argues the trial court erred and abused its discretion by allowing certain jurors to be empaneled who should have been stricken for cause. Specifically, Appellant argues juror 6 should have been stricken for cause due to numerous concerns raised, including that juror 6 "presented numerous bias risks," has hearing loss, and had stated he would suffer financial hardship and incur personal and professional burden from attending the trial. Further, Appellant argues jurors 7 and 12 should have been stricken for cause based solely on their admissions that serving on the jury would cause undue hardship.

"[T]he jury selection process is crucial to the preservation of [a criminal defendant's] right to an impartial jury [explicitly] guaranteed by Article I, § 9 of the Pennsylvania Constitution." *Commonwealth v. Hunsberger*, 58 A.3d 32, 38 (Pa. 2012) (citation omitted). "The decision whether to disqualify a venireman is within the discretion of the trial court and will not be disturbed on appeal absent a palpable abuse of that discretion." *Commonwealth v. Ingber*, 531 A.2d 1101, 1103 (Pa. 1987) (citations omitted).

The purpose of examining prospective jurors is to "ascertain[ ] whether the venireperson is competent and capable of rendering a fair, impartial and unbiased verdict." ***Commonwealth v. Penn***, 132 A.3d 498, 502 (Pa. Super. 2016) (citation omitted). "[T]he test of disqualification is the juror's ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence." ***Id***. (citation omitted). In other words, the relevant inquiry "is whether any biases or prejudices can be put aside upon the proper instruction of the court." ***Id.*** (citation omitted).

The decision whether to disqualify a prospective juror "is to be made by the trial judge based on the juror's answers and demeanor and will not be reversed absent a palpable abuse of discretion." ***Id***. (citation omitted). Appellate courts defer to the trial court's assessment of a prospective juror's answers during voir dire because the trial court is "in the best position to assess the [prospective juror's] credibility and fitness to serve[.]" ***Commonwealth v. Cox,*** 983 A.2d 666, 683 (Pa. 2009) (citation omitted).

Most importantly, we should give great weight to the trial court judge's decision about striking jurors because the trial court judge not only hears the words that the potential juror speaks, but also the manner in which the juror says those words and is in a better position than an appellate court to evaluate the significance of any hesitancy of a potential juror:

> The juror appears before the trial judge, who sees him and hears what is said; and is able to form his opinion as much from the proposed juror's conduct as from the words which he utters, printed in the record. Hesitation, doubt, and nervousness

indicating an unsettled frame of mind, with other matters, within the judge's view and hearing, but which it is impossible to place in the record, must be considered. As it is not possible to bring these matters to our attention, the trial judge's view should be given great weight in determining the matters before him.

*Shinal v. Toms*, 162 A.3d 429, 442 (Pa. 2017) (citation and brackets omitted).

Based on the vagueness of Appellant's argument, we are unable to determine which jurors Appellant is referencing by referring to juror 7 and juror 12 – whether those are their potential juror numbers or their actual juror numbers. After a review of the record, we are unable to find any questioning of jurors related to those numbers who gave a response indicating the undue hardships Appellant attributes to them.

Juror 6 (also known as juror no. 31 during voir dire) did respond affirmatively on the juror questionnaire that he would be more likely to believe the testimony of a police officer because of his job. *See* N.T., 1/19/23, at 229. However, when questioned for clarification, juror 6 stated this would not impact his ability to be fair and impartial in this matter. *See id*. He further affirmed that he would be able to hear the witnesses from where he would be seated as a juror. *See id*. at 251. It is clear that the trial court did not find that juror 6 expressed a sufficient predisposition to be excused from jury duty. *See id*. at 256 (denying defense motion to strike juror for cause).

Based on the above, we cannot say the trial court erred during the jury selection process. Appellant's issues in this regard are without merit.

In his final issue, Appellant argues the trial court erred and abused its discretion in denying a defense motion to play Tonia Scott's interview with police for the jury since the court had precluded testimony from Scott thereby making her an unavailable witness.

Appellant acknowledges that the court had the right to declare that Tonia Scott was "unavailable." Appellant's Brief, at 50. Appellant argues, however, that by doing so, the court failed to acknowledge that Pa. R.E. 804 would then apply to allow Tonia Scott's out-of-court statement to be moved into evidence, as a statement against interest.

On January 31, 2023, prior to the jury coming in, the court addressed certain witness issues. Relevantly, the defense had filed a motion to call Tonia Scott as a witness. Due to the outstanding charges against her in her severed case, the court conducted on-the-record questioning of Scott regarding her awareness of her constitutional rights, specifically waiver of her right to remain silent under Article 5 of the United States Constitution, and Article 1, Section 9 of the Pennsylvania Constitution. After questioning, the court found that Scott had not made a knowing, intelligent and voluntary waiver of her constitutional right to remain silent. **See** N.T., 1/31/23, at 34. Defense counsel for each co-defendant then joined in an oral motion to allow video to be played in which Scott provided a statement to police. **See id**. at 34-35. The court denied the request. **See id**. at 37-38.

Appellant argues that Rule 804 should have been applied to allow Tonia Scott's out-of-court statement to be moved into evidence simply because the court declared her as an unavailable witness. *See* Appellant's Brief, at 50.

The Commonwealth addressed this assertion during argument on this issue. Specifically, the Commonwealth argued Rule 804 does not stand for the proposition that evidence can come in simply because a witness has been declared unavailable. *See* N.T., 1/31/23, at 35-36. Rather, the defense must put forward a specific exception to Rule 804 that applies. *See id*. The Commonwealth asserted the defense had not put forward any specific exception, and therefore the motion should be denied. Further, the Commonwealth reiterated that any decision must align with the previous court order which prevented claims of ownership of the land from being admitted. *See id*. at 36.

While Appellant block quotes the section regarding an exception for a statement against interest, he does not otherwise include any meaningful discussion or legal analysis of how this particular exception applies here. *See* Pa.R.A.P. 2119(a); *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa. Super. 2002) ("The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.") (citations omitted); *see also In re S.T.S., Jr.*, 76 A.3d 24, 42 (Pa. Super. 2013) ("When an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived. [M]ere issue

spotting without analysis or legal citation to support an assertion precludes our appellate review of a matter.") (internal citations and quotation marks omitted). We will not develop arguments on behalf of an appellant. ***See Ramsden***, 94 A.3d at 1088. Accordingly, we find this issue waived.

Moreover, upon review of the record, it appears the court's decision to deny the motion was based on its review of Rule 804 and its prior finding that any testimony or statements by Scott would be irrelevant in the case at hand. As we have already agreed that such information is irrelevant to Appellant's case, it is unlikely this issue would merit any relief even if properly developed.

As we find Appellant's issues are either waived or without merit, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/20/2024