J-S04023-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
DANE EDWARD EPPLEY :
:
Appellant : No. 916 EDA 2023

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Monroe County
Criminal Division at No: CP-45-CR-0001221-2021

BEFORE: BOWES, J., STABILE, J., and LANE, J.

MEMORANDUM BY STABILE, J.: **FILED MAY 7, 2024**

Appellant, Dane Edward Eppley, was found guilty after a jury trial of simple assault (18 Pa.C.S.A. § 2701), as well as the summary offense of harassment – subjecting others to physical contact (18 Pa.C.S.A. § 2709(a)(1)). He was found not guilty of strangulation (18 Pa.C.S.A. § 2718). The Court of Common Pleas of Monroe County (trial court) sentenced Appellant to an aggregate jail term of 3 to 12 months. In this appeal, he now contends that (1) the evidence was legally insufficient as to the simple assault count; (2) the trial court erred in not granting a jury instruction on simple assault which mirrored the description of the offense in the charging document; and (3) the verdict was against the weight of the evidence. Finding no merit in any of these claims, we affirm.

On January 31, 2021, the victim in this case, Melissa Addison, was residing in the home of Appellant's elderly grandfather. Addison had begun taking care of Appellant's grandfather the prior year when she and Appellant were romantically involved, and Addison continued to do so after their relationship ended.

At about 10:30 p.m. on the date in question, Addison went to bed. Soon after that, Appellant came into her room, visibly intoxicated, and demanding that Addison move out within the next week. Addison thought Appellant was joking, and she tried to go back to sleep once he had left. But moments later, Appellant reappeared in Addison's room, suddenly becoming violent:

> [H]e busts back in before I could know it, I closed the -- went to close the window blind, which is right next to my bed. The bed is on the window. And before I could, he was there and he struck me, sucker punch over me. I couldn't even stand up and I had said, what are you doing, you don't wanna hit a woman, what did you do that for, what's wrong with you?
>
> But he was in like a drunken rage. I was scared. I don't know, I never had that happen to me before in my life.
>
> * * * *
>
> He smashed me, like grabbed me by my hair and pulled me and was punching and smacking and like hitting me and, I mean, like hitting, punch like, man, like an animal and he flung me like a rag doll and I was trying to put my hands up. I was trying to fight him, but I couldn't, he was too strong and overpowering and he was -- he was like an animal. He was striking me and punching me and hitting me and he twisted me in such a way that he flung me like a rag doll into the dresser and hit my head and I -- I don't know what you call it, stars, I saw stars and I blacked out.
>
> I was trying to -- but he had like an animal strength, like prisoner strength, like crazy drunk strength.

\* \* \* \*

And he choked me, was strangling me with his hands and he would hold my neck and my face on the floor and smother my breath into the carpet and he would choke and he was punching my body.

\* \* \* \*

He choked me twice, once while he was choking me out and once while he was strangling me. He pushed his hands around my neck and face and pushed so hard on these pressure points, that I told you, and that's why I believe I saw stars the first time.

And then when he flung me over the bed, he twisted my body in such a way that my face was on the floor and there was only so much room between the bed and he was standing over me, straddled, pushing my body and my face and punching and beating whatever he could hit on my body. My legs were in the air like behind me, I don't know how to describe that.

And he was smothering me under the bed and his hands at one point were in my mouth and he had it wrapped around and he was choking -- he choked me out. I lost my breath. He took it away. I blacked out and woke up to him choking me.

N.T. Trial, 4/20/2022, at 24-26.

Appellant's grandfather was woken up by the attack, and he managed to pull Appellant away from Addison. The police arrived soon thereafter, and photos were taken of Addison's injuries. These photos showed that Addison had been bruised on various parts of her face, neck, torso, and lower body and that several teeth had been chipped or cracked. *See id*., at 35-40. It appeared to Officer Michael Yosh, who responded to the home that night, that Addison's bruises were consistent with her having been choked as she had described. *See id*., at 98. Officer Yosh also believed that Appellant "was intoxicated at the time" of the incident. *Id*., at 107.

Appellant was arrested and later charged with strangulation (applying pressure to throat or neck); simple assault; and harassment. It was alleged in the charging document that Appellant committed the simple assault by attempting "to cause bodily injury to Melisas Addison by choking her and striking her in the face."

At the subsequent jury trial, Addison recounted the incident described above. Appellant also testified on his own behalf, denying that he ever struck Addison. According to Appellant, it was Addison who attacked him first after he asked her to move out of his grandfather's house. *See id*., at 149-53. At most, he "flicked the tip of her nose" with his fingertips to get her attention, and later used a painful "pressure point" near Addison's jaw to subdue her. *See id*. There was no evidence that Appellant had sustained any injuries himself during his violent encounter with Addison.

The jury was instructed on the offenses of strangulation and simple assault prior to deliberations. As to the simple assault count, the trial court tracked the language of the statute which defines the offense, instructing the jury in pertinent part as follows:

> First, that [Appellant] engaged in conduct that constituted a substantial step toward causing bodily injury to Melissa Addison. A substantial step is a major step towards the commission of the crime and one that strongly corroborates your belief that [Appellant], at the time he did the act, had a firm intent to commit the crime of simple assault. An act can be a substantial step even though other steps would have to be taken before the crime to actually be carried out.

> Second, that the conduct in this regard was intentional or, in other words, it was the [Appellant's] conscious object or purpose to cause bodily injury. Bodily injury, and that has a specific definition, it means the impairment of physical condition or substantial pain.

***Id***., at 210-11.

After those instructions were read, defense counsel asked for them to be clarified to state that Appellant had been charged with assaulting Addison by strangling her and striking her in the face, making it irrelevant, for the purposes of that count, whether Appellant had struck or caused injuries to any other parts of Addison's body. ***See id***, at 217-18. The trial court declined to amend the instruction, and the jury found Appellant guilty of simple assault. The trial court also found Appellant guilty of harassment, and he was then sentenced.

Appellant filed a post-sentence motion (styled as a motion for reconsideration) challenging the sufficiency and weight of the evidence, and the denial of his requested instruction on simple assault. The post-sentence motion was denied. Appellant then timely appealed and filed a 1925(b) statement enumerating his claims, which included a challenge to the sufficiency of the evidence and the denial of his requested jury instruction. In his brief, Appellant reasserts the claims contained in his 1925(b) statement, as well as a weight of the evidence claim.

We begin by addressing Appellant's first claim that the evidence of simple assault was legally insufficient because it did not establish the commission of the crime in the manner described in the charging document.[1]

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). Evidence is sufficient to support a guilty verdict where it "establishes each material element of the crime charged" beyond a reasonable doubt. *Id*. On appeal, the evidence must be viewed "in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence." *Id*. "[T]he trier of fact – while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part, or none of the evidence." *Commonwealth v. Dunkins*, 229 A.3d 622, 631 (Pa. Super. 2020).

A person is guilty of assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S.A. § 2701(a). Here, the Commonwealth alleged in the information that Appellant committed the offense of simple assault by "choking [the victim, Addison,] and striking her in the face."

_____

[1] Appellant arguably has waived his sufficiency claim by not identifying a specific element of simple assault which is not supported by the evidence. *See Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008) (sufficiency claim waived because appellant did not specify the element or elements he was challenging). However, it can be gleaned from Appellant's 1925(b) statement and his brief that he intended to argue that there was no evidence that Addison had been struck on the head or choked, as alleged in the information.

At trial, Addison testified in detail regarding an episode on January 31, 2021, in which Appellant repeatedly "punched" her and "flung" her around a bedroom. *See* N.T. Trial, 4/20/2022, at 24-25. She also testified that Appellant had "choked [her] twice, once while he was choking me out and once while he was strangling me." *See id*., at 26-27. The jury saw photographic evidence of bruising on Addison's face and neck; the jury also heard testimony from a responding officer who stated that Addison's injuries were consistent with being choked. Accordingly, there was evidence supporting the jury's finding of guilt beyond a reasonable doubt as to every element of simple assault – just as the offense was alleged in the charging document.

Appellant's second claim is that the trial court erred in not granting a jury instruction that defines the offense of simple assault in the precise way that it was described in the charging document. He argues that the denial of the instruction could have resulted in a finding of guilt based on conduct that was not alleged in the simple assault charge.

"[O]ur standard of review when considering the denial of jury instructions is one of deference – an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Galvin*, 985 A.2d 783, 788-89 (Pa. 2009). "[O]ur key inquiry is whether the instruction on a particular issue adequately, accurately and clearly presents the law to the jury, and is sufficient to guide the jury in

its deliberations." ***Commonwealth v. Hamilton***, 766 A.2d 874, 878 (Pa. Super. 2001).

In this case, the Commonwealth alleged that Appellant committed a simple assault upon Addison by striking her in the face and choking her. The jury was instructed, in relevant part, that Appellant was guilty of that crime if he intentionally sought to cause Addison physical injury or substantial pain. Addison's testimony, if believed, indisputably established that not only did Appellant have such an intent, but he also deliberately carried it out. Since there was competent evidence that Appellant in fact struck Addison in the face and choked her, no further instructions were needed in order to assist the jury in arriving at its verdict. Thus, this claim has no merit.[2]

The third and final claim raised in Appellant's brief is that the verdict was contrary to the weight of the evidence. As the trial court correctly noted, Appellant did not raise this issue in his 1925(b) statement, resulting in its waiver. ***See*** Trial Court 1925(a) Opinion, 6/7/2023, sat 6 n.4; ***see also Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not

---

[2] Appellant would have had a compelling argument that a modified instruction was needed if the evidence had only established injury or attempted physical harm to parts of Addison's body other than her head and neck. In that scenario, there would be a variance between what was proven and what was alleged as to the simple assault count, making an instruction necessary to harmonize the allegations and the evidence. But in this case, the Commonwealth proved exactly what it had alleged, so there was no variance. ***See e.g., Commonwealth v. Lohr***, 468 A.2d 1375, 1378 (Pa. 1983) (holding that there was no fatal variance between the charges and the verdict because the evidence at trial corresponded to what had been alleged as to the material elements of the offenses).

raised in a 1925(b) statement will be deemed waived"). Moreover, the issue, as discussed in Appellant's brief, is only nominally a weight of evidence claim because, in substance, it is merely a reiteration of the same issues that have already been addressed above.

Regardless, even had the weight of the evidence claim been properly asserted and preserved for appeal, it would be of no avail to Appellant, as we would find that no relief is due. "A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). When a defendant moves for a new trial on this ground, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id**. (quoting **Widmer**, 744 A.2d at 752). An appellate court will give "the gravest consideration to the findings and reasons advanced by the trial judge" when reviewing the propriety of its ruling that the verdict is not against the weight of the evidence. **Id**. (quoting **Widmer**, 744 A.2d at 753).

Although the trial court correctly ruled that Appellant had waived his weight of evidence claim for purposes of appeal, it nevertheless noted in its 1925(a) opinion that the same claim was raised in Appellant's post-sentence motion, and denied, because "it was not unreasonable for the jury to find that the victim in this case credibly testified that Appellant intended to cause her bodily injury." Trial Court 1925(a) Opinion, 6/7/2023, at 6 n.4. We agree

with the trial court insofar as there is nothing in the record that, when weighed against Addison's testimony and the corroborating photographic evidence, would cause the verdict to shock one's sense of justice.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/7/2024