J-S35020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                            :          PENNSYLVANIA
                                            :
              v.                       :
                                            :
RYAN ALLEN MCGINITY            :
                                            :
          Appellant         :  No. 496 MDA 2024

Appeal from the Judgment of Sentence Entered November 1, 2023
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s):  CP-38-CR-0000955-2022

BEFORE:  PANELLA, P.J.E., MURRAY, J., and KING, J.

MEMORANDUM BY MURRAY, J.:       **FILED: SEPTEMBER 27, 2024**

Ryan Allen McGinity (Appellant) appeals from the judgment of sentence imposed following his conviction by a jury of one count of simple assault, and his conviction by the trial court of harassment.[1]  After careful review, we affirm.

The trial court summarized the relevant evidence presented at Appellant's jury trial:

> At the jury trial, [the victim, Hope Degler (Degler or the victim),] testified that in July of 2022, she and [Appellant] had been in a romantic relationship for approximately four years.  The couple was living together at an apartment on Cindy Drive in Jonestown. Although they were still together, [Degler] felt that they were struggling and she wanted to end the relationship.
>
> Degler was a registered nurse and had worked a night shift on July 20, 2022.  She arrived home at approximately 10:30 p.m.

---

[1] 18 Pa.C.S.A. §§ 2701(a)(1), 2709(a)(1).

and went to sleep between 3:00 and 4:00 a.m. on July 21, 2022. At 12:30 p.m., she awoke to [Appellant] confronting her about text messages she had received from another man asking to meet her somewhere. Degler went back to sleep until 4:30 p.m.[,] when she awoke due to [Appellant] watching pornography on Degler's phone with the volume turned up. [Appellant] said something to Degler about [Appellant's] former girlfriend and Degler made a remark about [Appellant] having to watch pornography to become aroused. [Appellant] became angry and began throwing Degler's phone and breaking things in the bedroom. He struck Degler on the right side of her head and face until she began to bleed. He also struck her hips and thighs multiple times. Degler fought to get free from him and fled the home dressed in only a shirt and underpants. She drove to the Pennsylvania State Police (PSP) barracks in Jonestown.

….

Trooper Charles McFeeley [(Trooper McFeeley)] of PSP testified that he was on duty on July 21, 2022[,] when Degler appeared at the barracks at 5:00 p.m. She was barefoot and wearing only a t-shirt and underpants. She had a blanket wrapped around her. [Trooper] McFeeley described Degler as being emotionally distraught and [stated] she was crying and having difficulty speaking. There was fresh, liquid blood dripping down her face. Trooper McFeeley photographed Degler's injuries[,] and the photographs were presented at trial. (Exhibit "1") Trooper McFeeley testified that **Degler's injuries included a black and blue eye,** [] **swelling on her face and eye, and dried blood on her face. He observed welts and a handprint on Degler's thigh that could not have been self-inflicted, as the fingers pointed upward toward her face.** There was a stain on her shirt that was still wet.

Trial Court Opinion, 5/31/24, at 2-3 (emphasis added).

Following a jury trial on June 22, 2023, Appellant was convicted of simple assault.[2] On November 1, 2023, the trial court sentenced Appellant to

_____

[2] The trial court convicted Appellant of the summary offense of harassment.

11 months to 2 years less one day of incarceration for his conviction of simple assault.[3]  Appellant filed a post-sentence motion, which the trial court denied on March 7, 2024.  Thereafter, Appellant timely filed the instant appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

A. DID THE COMMONWEALTH FAIL TO PRESENT EVIDENCE SUFFICIENT TO SUSTAIN A CONVICTION FOR SIMPLE ASSAULT?

B. WAS THE GUILTY VERDICT CONTRARY TO THE WEIGHT OF THE EVIDENCE?

C. DID THE LOWER COURT ERR BY PROHIBITING TESTIMONY THAT THE VICTIM INVITED SOMEONE ELSE TO LIVE IN APPELLANT'S HOME[,] AFTER APPELLANT WAS BARRED FROM THE HOUSE, GIVEN THAT SUCH TESTIMONY WAS RELEVANT TO SHOW THE VICTIM'S MOTIVATION IN MAKING A FALSE CLAIM OF ABUSE?

D. DID THE LOWER COURT ERR BY PROHIBITING TESTIMONY THAT THE VICTIM ONCE BRAGGED TO APPELLANT THAT IF THERE WAS EVER A FIGHT BETWEEN THEM, HER VERSION OF THE EVENTS WOULD BE BELIEVED, GIVEN THAT SUCH TESTIMONY WAS RELEVANT TO SHOW THE VICTIM'S BELIEF THAT SHE COULD SUCCESSFULLY PRESENT A FALSE CLAIM OF ABUSE?

E. DID THE TRIAL COURT ERR BY PERMITTING THE COMMONWEALTH TO PLAY AN UNDULY PREJUDICIAL PRISON PHONE CALL FROM APPELLANT TO HIS MOTHER[,] WHERE THE CALL DID NOT INCLUDE ANY STATEMENTS AGAINST INTEREST OR OTHER RELEVANT EVIDENCE?

F. DID THE TRIAL COURT ERR BY PROHIBITING TESTIMONY THAT THE VICTIM MADE COMPLAINTS ABOUT GETTING BRUISES FROM THE COUPLE'S DOGS?

---

[3] Appellant's sentence for harassment merged with his sentence for simple assault.

G. DID THE TRIAL COURT ERR BY REFUSING TO GIVE A JURY INSTRUCTION ON [SIMPLE ASSAULT BY] MUTUAL AFFRAY?

H. DID THE TRIAL COURT ERR BY REFUSING TO GIVE A JURY INSTRUCTION ON ALIBI?

Appellant's Brief at 4-5 (issues reordered).

Appellant's first issue challenges the sufficiency of the evidence underlying his conviction of simple assault. *Id.* at 21. Appellant details the appropriate standard of review, and correctly defines the crime of simple assault. *Id.* at 21-22. However, Appellant offers only the following discussion related to this issue:

> Appellant respectfully asserts that while there was evidence of bodily injury presented, there was insufficient evidence that any such bodily injury was intentionally, knowingly or recklessly caused by [Appellant].

*Id.* at 23. Based on the lack of supporting argument or citations to authorities, we could deem this claim waived.[4] Nevertheless, we will address Appellant's sufficiency challenge.

---

[4] Our Supreme Court has stated,

> [w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of an appellate court to formulate [an] appellant's arguments for him. Indeed, we are neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter. The Court is left to guess at the actual complaint that is intended by the party.

*(Footnote Continued Next Page)*

When reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. … When reviewing a sufficiency claim, the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. In applying the above test, we may not [re]weigh the evidence and substitute our judgment for the fact-finder.

*Commonwealth v. James*, 297 A.3d 755, 764 (Pa. Super. 2023) (citations omitted; formatting modified).

Appellant was convicted of simple assault pursuant to 18 Pa.C.S.A. § 2701(a)(1), which provides as follows:

> **(a)** Offense defined.—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:
>
> > **(1)** Attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another.

18 Pa.C.S.A. § 2701(a)(1). "Bodily injury" is defined as the "impairment of physical condition or substantial pain[.]" *Id.* § 2703.

> The Commonwealth need not establish the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances, which reasonably suggest that a defendant intended to cause injury.

---

*Commonwealth v. Armolt*, 294 A.3d 364, 377 (Pa. 2023) (citations and internal quotation marks omitted).

- 5 -

*Commonwealth v. Wroten*, 257 A.3d 734, 743-44 (Pa. Super. 2021) (internal citations, original brackets, and most quotations omitted).

At trial, Degler testified that in July 2022, she and Appellant lived together at 325 Cindy Drive in Jonestown, Pennsylvania. N.T., 6/22/23, at 12. The couple had been in a relationship for four years. *Id.* at 13. On July 20, 2022, at about 10:30 p.m., Degler arrived home following her shift as a registered nurse. *Id.* at 13-14. Degler went to bed between 3:00 a.m. and 4:00 a.m. on July 21, 2022. *Id.* at 14. Sometime thereafter, Appellant gained access to Degler's phone. *Id.* at 15. According to Degler, Appellant became upset after finding a text message from another man on Degler's phone. *Id.* The other man had messaged Degler about "meeting him somewhere." *Id.*

At around 12:30 p.m., Appellant woke Degler to confront her about the text message. *Id.* Degler testified Appellant was upset because he wished to respond to the text and "say fuck you, but he wasn't able to" because of autocorrect. *Id.* at 16. Degler testified she went back to sleep. *Id.*

However, Degler woke again that afternoon, at around 4:30 p.m. *Id.* According to Degler, Appellant was in her bed, using Degler's phone, and "watching porn beside me." *Id.* Degler asked Appellant to "turn it down so I could sleep." *Id.* at 17. Appellant said "something smart that … upset" Degler. *Id.* According to Degler, she retorted, "I don't have to watch porn to get off. All I have to do is think about him." *Id.* at 18.

Degler testified that her comment enraged Appellant, who "[s]tarted throwing my phone.  He started breaking things in my room."  *Id.*  She testified, Appellant "**started to hit me on the right side of my head.  Then he proceeded to start hitting me in my face**."  *Id.* at 19 (emphasis added).  Degler confirmed that during this time, she began to bleed.  *Id.* at 20.  According to Degler, Appellant struck her in the face with both an open and closed hand.  *Id.*  The interaction lasted about 30 seconds.  *Id.*

Degler fled the house wearing only a shirt and underwear, and drove to the PSP barracks.  *Id.* at 20, 21.  Degler testified she was scared.  *Id.* at 20.  About five to seven minutes later, Degler arrived at the PSP barracks.  *Id.* at 22.  Degler described photos of her injuries taken by the PSP.  *Id.* at 26-30.  One photo showed that Degler's face was "bruised already and swollen."  *Id.* at 27.  Degler specifically testified Appellant caused her injuries, and she "was hurt, emotionally and physically."  *Id.*

PSP Trooper McFeeley testified that on July 21, 2022, at about 5:00 p.m., Degler walked into the PSP barracks' lobby.  *Id.* at 52.  According to Trooper McFeeley, Degler "was wrapped in a blanket when she came in.  She was wearing a T-shirt and underwear, no shoes, no socks."  *Id.*  Trooper McFeeley described Degler as "very emotional.  She seemed distraught.  She was crying.  She had difficulty speaking … from emotions."  *Id.* at 53.

Trooper McFeelely testified that "[w]hen [Degler] came in she actually had a nosebleed.  You could see blood dripping from her facial area."  *Id.*

According to Trooper McFeeley, the blood was fresh and liquid. *Id.* Trooper McFeeley photographed Degler's injuries. *Id.* at 54. Trooper McFeeley described Degler's injuries to the jury, as depicted in the photographs he had taken. *Id.* at 56-60. According to Trooper McFeeley, Degler sustained a bruised eye and facial swelling. *Id.* at 56. He observed dried blood on Degler's face. *Id.* Trooper McFeeley testified regarding a hand print on Degler's thigh, "with the fingers pointed up toward [Degler's] face." *Id.* at 58. He described the injury as a "welt." *Id.* Trooper McFeeley stated Degler could not have caused this injury to herself. *Id.*

This evidence, viewed in a light most favorable to the Commonwealth, was sufficient to establish that Appellant attempted to or "intentionally, knowingly or recklessly cause[d] bodily injury" to Degler. 18 Pa.C.S.A. § 2701(a)(1); *see also Wroten*, 257 A.3d at 743-44. Accordingly, Appellant's challenge to the sufficiency of the evidence merits no relief.

In his second issue, Appellant challenges the verdict as against the weight of the evidence. Appellant's Brief at 23. Appellant asserts that he and Cynthia McGinity (Ms. McGinity), his mother, both testified Appellant was not at home when the alleged assault took place. *Id.* at 24. Appellant further argues that,

> [s]ince the victim had fresh blood dripping from her face at the time she appeared at the [PSP] barracks, her injury could not have occurred prior to her leaving the house that morning. Appellant respectfully asserts that while there is no real question that Degler appeared at the State Police barracks around 5:00 PM with obvious injuries, there was insufficient evidence as to when and

- 8 -

where those injuries occurred. Degler's testimony was unreliable and should be accorded little or no weight.

*Id.*

We review a trial court's ruling on a challenge to the verdict as against the weight of the evidence for an abuse of discretion. *Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023).

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. **It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence.** We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. **Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.**
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

*Id.* (emphasis added) (quoting *Commonwealth v. Arnold*, 284 A.3d 1262, 1277 (Pa. Super. 2022)).

Appellant testified that on July 21, 2022, he woke up at about 8:00 a.m. N.T., 6/22/23, at 115. Appellant stated that at around 9 or 10 o'clock, while

- 9 -

playing a game on Degler's phone, he saw "a whole series of messages from this gentleman, John Smith. We are all friends, so I know him." *Id.* at 117. According to Appellant, Degler woke up and, while still in bed, grabbed a cigarette. *Id.* Appellant read the text messages to Degler, who stated "how wet she was thinking about how good [Smith had] helped her" previously. *Id.* At that time, Appellant testified, he threw Degler's phone on the bed. *Id.* at 118.

Appellant testified that Degler retrieved a soda, stated she hated Appellant, and then dumped the soda on Appellant's head. *Id.* Appellant stated he then turned around and grabbed Degler's right hand. *Id.* According to Appellant, Degler scratched him, then began hitting him. *Id.* at 119. According to Appellant, Degler kept hitting him, "trying to egg me on." *Id.* Appellant testified that while he was on the bed, and Degler standing beside him,

> [s]he lunged at me. I said to myself, put your feet up and I caught her in the face. It was kind of like shocking. I wasn't trying to do that. I was just trying to keep a distance from her. It connected [with] her in the face or her chest. I was just trying to get away.

*Id.* at 120. Appellant claimed that Degler left their residence at around 9 or 10:00 a.m. *Id.* at 122.

Appellant's Mother, Ms. McGinity, testified regarding a prior conversation in which Degler claimed that her dogs had caused bruising to her legs and arms. *Id.* at 94. According to Ms. McGinity, Appellant was at her house on July 21, 2022, from 11:00 a.m. until 7:30 p.m. *Id.* at 96.

- 10 -

In its opinion, the trial court addressed Appellant's weight challenge, and concluded it lacks merit:

[The trial court] will not grant a new trial because of a mere conflict in the testimony, and [the court] also notes that [it] would have arrived at the same conclusion [as the jury]. Notably, the weight of the evidence was exclusively for the jury, rather than [the trial court,] which was free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. The Commonwealth presented the testimony of multiple witnesses, and [Appellant] presented the testimony of multiple witnesses; exhibits were also presented. The jury was free to consider the exhibits and to consider the testimony by the Commonwealth's witnesses to be more credible. [The trial court] was not shocked by the result given the facts of the case. Therefore, [Appellant] is not entitled to relief on this issue because the guilty verdict was not contrary to the weight of the evidence[,] and thus[, Appellant] is not entitled to a new trial.

Trial Court Opinion (Post-Sentence Motions), 3/7/24, at 9-10.

Appellant essentially asks this Court to reweigh the evidence presented at trial and reassess the credibility of the witnesses. This we cannot do. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa. Super. 2021) ("Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court."). We discern no abuse of the trial court's discretion in denying Appellant's challenge to the weight of the evidence. Accordingly, Appellant's second issue fails.

In his third issue, Appellant argues that the trial court improperly precluded testimony that, after he was barred from his and Degler's residence, Degler invited someone else to live in their home. Appellant's Brief at 13.

Appellant claims his theory "was that [Degler] fabricated an assault in order to quickly evict [Appellant] from their shared home." *Id.* Appellant argues this evidence "was of great significance in showing that Degler had a motivation for fabricating an attack." *Id.* at 14. Appellant asserts, "[b]arring such evidence impermissibly prevented Appellant from defending himself and telling his side of the story." *Id.*

The Commonwealth counters,

[w]hether the victim allowed someone else to live with her after this incident is irrelevant and does not tend to make a material fact more or less probable even if she did. It does not aid the [j]ury in determining whether [Appellant] did or did not attack, attempt to injure or injure the victim in this case.

Commonwealth's Brief at 15.

We are mindful of our standard of review:

When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

The threshold inquiry with admission of evidence is whether evidence is relevant. *Commonwealth v. Collins*, 888 A.2d 564, 577 (Pa. Super. 2005). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Evidence is relevant if "it has the tendency to make a fact more or less probable than it

- 12 -

would be without the evidence" and "the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b).

Instantly, the trial court concluded Appellant's claim regarding the admissibility of Degler's subsequent actions lacks merit:

> Evidence of what happened after this incident with regard to Degler's living situation was irrelevant to what occurred on July 21, 2022. **Such evidence would not have tended to make a material fact more or less probable even if this was true.** Such evidence would not have aided the jury in determining whether [Appellant] attacked Degler and caused her injuries. The admission of such testimony would have served only to confuse the jury and possibly shift its focus on issues unrelated to its ultimate decision of [Appellant's] guilt.

Trial Court Opinion, 5/31/24, at 12 (emphasis added). Upon reviewing the record, we discern no abuse of the trial court's discretion in precluding evidence of Appellant's living situation after the assault. Accordingly, Appellant's third issue merits no relief.

In his fourth issue, Appellant argues that the trial court

> [e]rred by prohibiting relevant testimony that [Degler] once bragged to Appellant that if there was ever a fight between them, her version of events would be believed.

Appellant's Brief at 15. Appellant explains that his counsel unsuccessfully sought to ask Degler the following question during cross-examination: "Isn't it true you once told [Appellant] that if [you] were ever in a fight, [the authorities] would believe [Degler] over [Appellant]?" *Id.* (citation omitted). Appellant asserts that Degler's history of bragging that she would be believed "is relevant to exposing her lack of credibility." *Id.* He speculates,

- 13 -

[l]ong before the actual physical confrontation took place, Degler had already thought through how she thought it would play out once a story was reported to authorities. She thought she would be believed, regardless of the actual facts. Such evidence would have gone to her credibility and shown that the facts she asserted in her other testimony were less probable.

*Id.* at 16. Appellant includes no citations to relevant authorities that support his argument. Thus, this issue is waived. *See Armolt*, 294 A.3d at 377.

Nevertheless, we agree with the trial court that

this testimony is irrelevant. Pa.R.E. 401; Pa.R.E. 402. Moreover, … the probative value, if any, of whether Degler said such a statement is outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury. Pa.R.E. 403….

Trial Court Opinion (Post-Sentence Motions), 3/7/24, at 11. In its Pa.R.A.P. 1925 opinion, the trial court additionally (and appropriately) observed that

[i]t would have been inappropriate to permit the introduction of Degler's own opinion as to her credibility[,] as the admission of such evidence would have invaded the province of the jury in determining a witness's credibility. Such evidence would not have aided the jury in its determination of what occurred on July 21, 2022[,] as it had no bearing on the events which led to the charges in this case.

Trial Court Opinion, 5/31/24, at 13. Even if Appellant had not waived this claim, we would conclude it lacks merit for the above-stated reasons.

In his fifth issue, Appellant argues that the trial court improperly permitted the Commonwealth to play an unduly prejudicial prison phone call from Appellant to his mother[,] since the call did not include any statements against interest or other relevant evidence.

Appellant's Brief at 16. Appellant does not discuss the contents of the call in his brief. He argues,

> [w]hile the Commonwealth asserted the call was relevant to show that Appellant went "crazy" as a result of what he found on Degler's phone, it fell far short of outweighing the prejudice inherent in playing a prison phone call….

*Id.* at 16-17.

Appellant argues the phone call provided only cumulative evidence that Appellant had found a text message from another man on Degler's phone. *Id.* at 17. He asserts this fact was not in dispute. *Id.* Appellant argues that playing a prison phone call unduly prejudiced him in the eyes of the jury. *Id.*

The Commonwealth disagrees, pointing out that the trial court narrowly tailored its ruling to avoid prejudice:

> The [trial court] was clear that the Commonwealth could play the portions of the conversation that had to do with [Appellant] speaking about the incident at bar and him finding things on the victim's phone that upset him. The [trial court] specifically precluded the Commonwealth from offering any audio recording regarding discussions about bail or to emphasize the point that [Appellant] was incarcerated at the time of the call.

Commonwealth's Brief at 17 (citations omitted).

At trial, the Commonwealth played for the jury two recordings of telephone calls between Appellant and his mother. N.T., 6/22/23, at 76. The recordings totaled 11 seconds. *Id.* In concluding Appellant's challenge to their inadmissibility lacks merit, the trial court opined as follows:

> Only two short portions of the call were played for the jury. In those portions, [Appellant] discussed finding messages from another man on Degler's phone, that she and the other man were not "just friends," and that it made [Appellant] "crazy." This evidence was relevant to [Appellant's] state of mind at the time of the incident and supported Degler's version of the events of July 21, 2022. [The court] sought to minimize any reference to

- 15 -

> [Appellant] being incarcerated. Thus, [the court] believe[s] that this evidence did not result in unfair prejudice to [Appellant] or that it was necessarily cumulative.

*Id.*

Our review confirms the trial court's assessment that the recordings were relevant to Appellant's state of mind at the time of the assault. Our review further confirms the trial court avoided any undue prejudice to Appellant by precluding any references to Appellant's incarceration. Under these circumstances, we discern no abuse of the trial court's discretion in admitting the recordings. Appellant's fifth issue merits no relief.

In his sixth issue, Appellant argues the trial court improperly precluded testimony that Degler had previously "made complaints about getting bruises from the couple's dogs." Appellant's Brief at 17. Appellant claims his theory of the case "was that there was an explanation for Degler's bruises other than criminal conduct by Appellant." *Id.* at 17-18. According to Appellant, the trial court sustained the Commonwealth's objections to the following question to his mother, Ms. McGinity: "Did [Degler] make complaints to you about getting bruises from the dogs?" *Id.* at 18 (citation omitted).

Appellant points out that during cross-examination, Degler answered in the negative when asked:

> Do you recall telling [Ms. McGinity] that you would have a bruise from dogs jumping on you, and that is why you weren't wearing a seat belt?

*Id.* (citation omitted). According to Appellant,

[p]rohibiting [Ms.] McGinity from answering stopped the jury from learning that while Degler was now denying that she was bruised from dogs jumping on her, she had previously made that exact complaint. That goes both to her credibility and to Appellant's theory as to the cause of Degler's bruising. The bruising evidence had significant probative value but was not in any way unfairly prejudicial or otherwise objectionable. Again, it should have been admitted.

*Id.*

The Commonwealth posits this issue is moot. Commonwealth's Brief at 18. According to the Commonwealth, Appellant was permitted to cross-examine Degler as to whether she sustained bruising from the couple's dogs.

*Id.*

Our review of the record discloses that Ms. McGinity, in fact, testified regarding Degler's prior statements, during a car ride, about bruising from dogs:

[Appellant's Counsel:] Did [] Degler give you a reason for not wearing a seatbelt?

[Ms. McGinity:] [Degler] said that between her breasts, she has a black and blue mark. She told me about the dogs jumping on her all of the time when she walks in the door, which I agree because they jumped on me. ….

Q. What kind of dogs are these?

A. Labs. They are probably 80/90 pounds.

Q. Did she show you any bruises?

A. She showed me the one on her legs and her arms. She said, I'm bruising a lot lately. I don't know why. I said, you should get that checked out.

N.T., 6/22/23, at 94.

- 17 -

When Appellant sought to introduce further testimony about a similar conversation between Ms. McGinity and Degler, the trial court sustained the objection, stating, "Let's stick to just the car ride." *Id.* at 95.

Pennsylvania Rule of Evidence 403 provides that,

[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, **or by considerations of** undue delay, waste of time, or **needless presentation of cumulative evidence.**

Pa.R.E. 403 (emphasis added).

As set forth above, the trial court permitted Ms. McGinity to testify regarding a conversation in which Degler blamed the dogs for causing her bruises. Testimony regarding a second conversation, about the same subject, would have been cumulative. Under these circumstances, we discern no abuse of the trial court's exercise of discretion in precluding this cumulative evidence. Consequently, Appellant's sixth issue merits no relief.

In his seventh issue, Appellant argues that the trial court erred in refusing to instruct the jury on simple assault by mutual affray. Appellant's Brief at 19. Appellant argues, "[t]he Commonwealth attempted to present evidence that [Appellant] was the aggressor in a fight, while Appellant presented evidence that Degler was the aggressor." *Id.* He asserts, "[c]learly there was evidence that Degler voluntarily entered into a fight or scuffle by attacking [Appellant]." *Id.* Appellant asserts,

[w]hile it is true that it is Appellant's position that he did not intentionally strike Degler, if the jury rejected that position they

- 18 -

could have also found that Degler attacked [Appellant] as well. Had the jury been given the opportunity to do so, they could have then found [Appellant] guilty of the lesser offense of simple assault by mutual affray ([a third-degree misdemeanor]) rather than simple assault ([a second-degree misdemeanor])….

*Id.* at 19-20.  Appellant argues the jury should have been permitted to consider if the lesser charge fit the evidence they heard.  *Id.* at 20.

"In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (citation omitted).  A defendant is entitled to a requested instruction when the reason for the instruction is supported by the evidence.  *Commonwealth v. Markman*, 916 A.2d 586, 607 (Pa. 2007).  Where a defendant "presents evidence that supports his claimed defense, regardless of whether the facts are as he believes them to be, he is entitled to the jury instruction he requested." *Commonwealth v. Hamilton*, 766 A.2d 874, 880-81 (Pa. Super. 2001) (internal citations omitted).

Appellant claims the evidence supported an instruction on simple assault by mutual affray.  The Crimes Code provides, a person is guilty of simple assault by mutual affray if the simple assault is committed while "in a fight or scuffle **entered into by mutual consent**," which reduces the charge to a third-degree misdemeanor.  18 Pa.C.S.A. § 2701(b)(1) (emphasis added).

As detailed above, Degler testified Appellant attacked her, hitting her with an open hand and closed fist.  N.T., 6/22/23, at 19-20.  Appellant testified

that Degler physically attacked him. *Id.* at 115-18. Thus, the parties presented conflicting versions of the events. Either (a) Appellant attacked Degler, or (b) Degler attacked Appellant. There is no evidence the parties engaged "in a fight or scuffle entered into by mutual consent[.]" 18 Pa.C.S.A. § 2701(b)(1). Thus, the evidence did not support a charge on simple assault by mutual affray.

> The trial court reached the same conclusion:
>
> The Commonwealth presented evidence that [Appellant] attacked Degler after becoming angry at her for receiving messages from another man[,] and [for Degler's] making derogatory comments about [Appellant's] need to view pornography. [Appellant] offered testimony that Degler was the aggressor and that he acted only to defend himself from her actions. **There was no evidence that the altercation was precipitated by Degler and [Appellant's] mutual agreement or consent.** Based on the evidence adduced at trial, the jury was required to determine whether [Appellant] attacked Degler or whether Degler attacked [Appellant]. There was no reason for [the trial court] to give an instruction on mutual affray, and doing so would have only led to jury confusion in light of the evidence presented.

Trial Court Opinion (Pa.R.A.P. 1925), 5/31/24, 15-16 (emphasis added). We agree. The evidence did not support a jury instruction on simple assault by mutual affray. Appellant's seventh issue merits no relief.

In his eighth and final issue, Appellant claims the trial court erred in not issuing an alibi jury instruction. Appellant's Brief at 20. Appellant claims an alibi instruction is supported by the six-hour discrepancy between his and Degler's version of the events. *Id.* Appellant acknowledges he was present during a dispute with Degler. *Id.* However, he points out Trooper McFeeley's

testimony that Degler had "fresh, liquid blood" dripping from her face when she entered the PSP barracks at 5:00 p.m. *Id.* at 20-21. Appellant argues,

> [t]here is only one way in which the jury could reconcile that with [Appellant's] seemingly conflicting testimony that the physical altercation occurred six hours earlier. The jury could have found, based on the evidence presented, that there was an intervening act of some kind by Degler or someone else other than [Appellant] that was the actual cause of the bleeding and injuries….

*Id.* at 21. Appellant argues he was entitled to a jury instruction "that [the jury] should consider Appellant's evidence that he was not present when the injury to Degler took place." *Id.*

The Commonwealth counters that at trial, Appellant challenged the timing of the assault, and claimed self-defense, but did not assert an alibi defense. Commonwealth's Brief at 20.

> As our Supreme Court has explained,

> "an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Ali*, … 10 A.3d 282, 316 ([Pa.] 2010). Although an alibi may be stronger if accompanied by corroborative evidence, even absent such proofs a defendant's testimony that he was elsewhere when the crime occurred, standing alone, amounts to an alibi defense, and it is for the jury to decide how much weight to give such testimony. *See Commonwealth v. Roxberry*, … 602 A.2d 826, 828 ([Pa.] 1992).

*Commonwealth v. Jones*, 210 A.3d 1014, 1017 (Pa. 2019).

The trial court rejected Appellant's claim of error for failing to issue an alibi instruction:

> [Appellant] argued that he acted defensively, that he was not responsible for all of Degler's injuries, and that the altercation

happened at a different time. Because [Appellant] never argued that he was not present during the altercation which would make it impossible for him to be the guilty party, an alibi jury instruction had no applicability to the presented facts, and thus, th[e trial c]ourt had no duty to give the jury an alibi instruction. Accordingly, th[e trial c]ourt did not err by declining to give an alibi jury instruction….

Trial Court Opinion (Post-Sentence Motions), 3/7/24, at 14 (citations omitted).

We agree. Appellant's testimony would not have supported an alibi instruction. **See id.** Appellant's final issue merits no relief.

Consequently, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/27/2024